**DAVIDSON HOTEL COMPANY,**
**Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE**
**INSURANCE COMPANY,**
**Defendant.**

**No. 99–2355 M1/BRE.**

United States District Court,
W.D. Tennessee,
Western Division.

March 12, 2001.

J. Brook Lathram, Burch Porter & Johnson, Memphis, TN, Lawrence D. Mason, Henry R. Daar, Daar Fisher Kanaris & Vanek, P.C., Chicago, IL, for Plaintiff.

Terrence R. Joy, Robins Kaplan Miller & Ciresi, Minneapolis, MN, Alan R. Miller, Joseph A. Hanlon, Stephen L. Coco, Robins Kaplan Miller & Ciresi, Boston, MA, Michael G. McLaren, Black & McLaren, Memphis, TN, Douglas G. Houser, Thomas B. Powers, John A. Bennett, Bullivant Houser Bailey, Portland, OR, for Defendant.

J. Daniel Breen, Memphis, TN, Pro se.

**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT ORDER GRANTING DAVIDSON'S MOTION TO STRIKE ST. PAUL'S SUPPLEMENTAL MOTIONS FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

MCCALLA, District Judge.

Before the Court are the following motions for summary judgment filed by the Parties:

(1) By Plaintiff Davidson Hotel Company for partial summary judgment on the issue of coverage filed on May 4, 2000;

(2) By Defendant St. Paul for partial summary judgment filed on June 21, 2000; and

(3) By Plaintiff Davidson Hotel Company for partial summary judgment on the interpretation of the demolition and increased cost of construction coverage filed on July 11, 2000.

## I. Background

Plaintiff Davidson Hotel Company ("Davidson") owns and operates the Hotel Deauville in Miami, Florida. Davidson and Defendant St. Paul Marine and Fire Insurance Company ("St.Paul") entered into a contract of insurance regarding the Hotel Deauville for coverage from March 1, 1997, to March 1, 1998. The insurance policy is a general risk policy with enumerated exclusions.

On February 16, 1998, an incident occurred at the Hotel Deauville which gave rise to this lawsuit. On that day, water infiltrated a bus duct in an electrical room on the ninth floor and resulted in an electrical disturbance which activated the sprinkler system, leading to water damage in the hotel and causing the fire department to be called to the scene. Apparently, the water reached the ninth floor electrical room by traveling from an electrical room located on the eleventh floor directly above the ninth floor electrical room. The water easily traveled between the floors because of holes in the floors of the eleventh and tenth floor electrical rooms which had been left by workmen while the hotel was under previous ownership. The water appears to have originated from the guest room across the hall from the eleventh floor electrical room, though there is a discrepancy as to the exact origin of the water. Davidson asserts that the water resulted from an overflowing toilet in the guestroom. St. Paul argues that the water leaked from a corroded water heater.

Immediately following the February 16, 1998, event, Davidson notified St. Paul of the incident, and St. Paul began its investigation. Funds were advanced from St. Paul to Davidson on February 27, 1998 ($300,000), April 9, 1998 ($600,000), June 23, 1998 ($1,000,000), and August 18, 1998 ($1,000,000). On January 1, 1999, however, St. Paul notified Davidson that it had not yet determined whether the loss was covered under the policy. Davidson filed this suit on April 23, 1999, alleging breach of insurance contract, bad faith failure to pay in violation of Tenn.Code Ann. § 56–7–105 (2000), and violation of Tennessee's Consumer Protection Act codified at Tenn. Code Ann. § 47–18–101, et seq. (1995). St. Paul answered these allegations by denying any wrongdoing, asserting that the loss is not covered under the policy, and asserting a counterclaim seeking repayment of the monies advanced to Davidson.

## II. Summary judgment standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.

R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate, *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246 (6th Cir.1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## III. Discussion

▇▇▇ The Parties agree that the insurance policy at issue here is governed by Tennessee law. Under Tennessee law, the interpretation of an insurance contract is a matter of law to be determined by the Court. *Pruett Enters., Inc. v. Hartford Steam Boiler Inspection and Ins. Co.*, 1997 WL 170302 at \*4 (Tenn.Ct.App. April 11, 1997). An insurance policy is to be interpreted as any other contract, *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (2000), and a court must interpret a contract according to its plain terms, considering the entire contract when determining the meaning of any or all of its parts, *Mid–South Title Ins. Corp. v. Resolution Trust Corp.*, 840 F.Supp. 522, 526 (W.D.Tenn.1993). A Court must read an insurance contract as a layperson would read it. *Paul v. Ins. Co. of N. Am.*, 675 S.W.2d 481, 484 (Tenn.Ct.App.1984). Where an all-risk insurance policy is involved, the insurer must show that an exclusion applies in order to avoid liability, *Farmers Bank & Trust Co. v. Transamerica Ins. Co.*, 674 F.2d 548 (6th Cir. 1982), and exclusionary clauses are to be strictly construed against the insurer, *Mid–South Title*, 840 F.Supp. at 526. Also, principles of waiver and estoppel cannot operate "to broaden the coverage of an existing contract to include risks not originally contracted for." *African Trading Int'l, Inc. v. Fireman's Fund Ins. Co.*, 583 S.W.2d 607, 609–610 (1979).

### A. Coverage

▇▇▇ Because of the concurrence of several events giving rise to the loss (i.e., corrosion of the water heater, water flowing from it, the hole in the floor of the electrical room, an electrical event in the ninth floor electrical room), the Parties have extensively discussed whether Tennessee law follows the concurrent causation doctrine or the efficient proximate cause doctrine (which can also be referred to as the chain of events doctrine). The concurrent causation doctrine allows for recovery

> where the loss is essentially caused by an insured peril with the contribution of an excluded peril merely as part of the chain of events leading to the loss ....

Thus, under a policy insuring against property loss "directly" resulting from a particular cause or risk, but excluding coverage against loss by certain enumerated other causes, the insurer's contention that coverage does not exist since an excluded risk combined with an included risk to bring about the loss is without merit.

10 Couch on Insurance 3d § 148:61. On the other hand, efficient proximate cause or chain of events analysis can be best described as looking to the chain of events leading to the damage in order to determine the proximate cause of the loss. Then, whether the proximate cause is covered or excluded determines whether the loss is covered or excluded under the policy. 10 Couch on Insurance 3d § 148:62; see also Garvey v. State Farm Fire & Cas. Co., 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704 (1989).[1]

Plaintiff argues that Allstate Insurance Company v. Watts is the controlling case on this subject. 811 S.W.2d 883 (Tenn. 1991). In Allstate, the Tennessee Supreme Court stated that

there should be coverage in a situation ... where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy.

Id. at 887. In determining whether the insurer faced liability under a homeowner's policy, the court in Allstate noted that the damage resulted from the negligence of the homeowner while performing maintenance on his car with the injured party in his garage. Injury resulting from the maintenance of motor vehicles was excluded under the policy. However, the Court found that the negligence of the homeowner was covered under the policy and that, even though both an excluded and nonexcluded cause gave rise to the injury, the insurer was liable since the negligence of the homeowner was a substantial factor causing the injury. The Court stated explicitly,

It is true that "arising out of" is an extremely broad phrase, so broad, in fact, that it is difficult to conceive of a rule that draws a justifiable line between coverage and no coverage at any reasonable point. Adopting Allstate's interpretation of "arising out of" to include any causal relationship would exclude coverage if, for example, [the injured party] had gone into [the homeowner's] home to retrieve a tool to aid in removing the lug nuts, and fell down a flight of stairs. Arguably, at least, maintaining the vehicle would have set in motion the chain of events that produced the eventual result. That is, but-for [sic] the difficulty encountered in maintaining the brakes on the truck, [the injured party] would not have been inside the home when he fell in order to obtain the tool. The problem with this approach is that cause and effect extend to near infinity. It is for this reason that we reject the "chain of events" theory of application which appears to hinge on a "but-for" theory of causation.

·　　·　　·　　·　　·

We reject the contention that there can be no coverage when the chain of events

---

**1.** The distinction between these two analyses is largely irrelevant in a case such as the present one, where the concurrent causes also occur in a linear chain of events since concurrent causation analysis, discussed more fully below, also requires a proximate cause determination. In other words, the distinction between these two modes of analysis is brightest where independent causes combine to create a loss, not where causes flow from each other in a linear manner.

leading to the ultimate harm is begun by an excluded risk, concluding instead that coverage cannot be defeated simply because excluded risks might constitute an additional cause of the injury.

*Id.* at 887–888. While the facts are, of course, different in the present case, the Tennessee Supreme Court considered a situation similar to the one at bar in which both an excluded cause and a nonexcluded cause resulted in the damage. The Court finds the *Allstate* case controlling and follows the guidance set forth therein by the Tennessee Supreme Court in concluding that Tennessee law employs the concurrent causation doctrine.

■■■■ The Sixth Circuit has also relied upon *Allstate* to conclude that Tennessee follows the concurrent causation doctrine. *Cadmus v. Aetna Cas. and Sur. Co.*, 1996 WL 652769, *1, 100 F.3d 956 (6th Cir. 1996). Although *Cadmus* is an unpublished decision,[2] the Court finds that the case is very much on point and is persuaded by the reliance upon *Allstate*. Furthermore, a Tennessee Court of Appeals has also relied upon *Allstate* in concluding that Tennessee follows the concurrent causation doctrine. *Planet Rock, Inc. v. Regis Ins. Co.*, 6 S.W.3d 484 (Tenn.Ct.App.1999). This Court agrees with the *Planet Rock* court that Allstate controls this question of law.

Defendant asserts that reliance upon *Allstate* for the proposition that Tennessee law utilizes the concurrent causation doctrine is misplaced. Instead, Defendant argues that the Tennessee Supreme Court in *Allstate* incorrectly relied upon the Califor-

nia case *State Farm Mutual Auto. Ins. Company v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973), in iterating the concurrent causation doctrine. Defendant argues that *State Farm* does not apply to first party property insurance cases in light of *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal.3d 395, 257 Cal. Rptr. 292, 770 P.2d 704 (1989). Assuming arguendo that the Tennessee Supreme Court misread the California case, the Tennessee Supreme Court explicitly stated its rationale for rejecting a chain of events analysis and adopting a concurrent causation approach. The Tennessee Supreme Court has not changed its analysis, and absence such change, this Court finds the Tennessee Supreme Court's rationale highly persuasive and adheres to the rule of law articulated in *Allstate*.

Having concluded that Tennessee follows the concurrent causation doctrine, this Court must then look at the facts of this case to determine if a covered cause was a substantial factor in causing the damage.[3]

### 1. Water heater

■■■■ For purposes of its motion for partial summary judgment on the issue of coverage, Davidson stipulates to the fact that the water originated from a corroded water heater. Therefore, there is no issue of fact precluding summary judgment on this point.

■■■■ The insurance policy provided by St. Paul is a general risk policy. The policy states, "[t]his policy insures against

---

2. Although citation to unpublished Sixth Circuit precedents is disfavored, this case is referred to in the absence of clear published case law from this Circuit "because it establishes the law governing the present action and 'there is no [Sixth Circuit] published opinion that would serve as well.' " *Norton v. Parke*, 892 F.2d 476, 479 n. 7 (6th Cir.1989).

3. The Court notes that even if efficient proximate cause analysis were utilized, the facts show that the proximate cause of the damage was the water infiltrating the bus duct and that such cause is a covered peril (see discussion below). St. Paul incorrectly relies upon rust and corrosion as the proximate cause when it, in fact, was merely the initiating event.

Risks of Direct Physical Loss or Damage to property insured occurring within the term of the Policy, except as hereinafter excluded." In considering an all-risk policy, the burden is upon the insurer to show that an exclusion applies. *Blaine Constr. Corp. v. Ins. Co. of N. Am.*, 171 F.3d 343, 349 (6th Cir.1999). St. Paul asserts that the loss in question is excluded based upon a number of exclusions. First, the policy lists as a peril excluded:

> This policy does not insure against loss or damage caused by or resulting from: ... rust or corrosion ... unless caused by a peril not otherwise excluded by this policy.

St. Paul advances the argument that the damage caused by the water "resulted from" the rust or corrosion to the water heater. The Court finds that a reading of the plain language of this section indicates that the rust or corrosion exception applies only to loss with regard to the water heater itself. The expansive interpretation sought by St. Paul does not find support in the words of the exclusion.[4] The Court cannot move past the plain language and create an exception where it does not exist. Furthermore, the last clause of this exclusion is critical—a loss resulting from rust or corrosion is not insured against unless

the damage is cause by a peril not otherwise excluded under the policy.[5] Thus, the Court must fully analyze each stage of the events of February 16, 1998, to find if there is a peril causing the loss that is a proximate cause of the loss and not excluded by the policy.

■ St. Paul argues that water flowing from a corroded water heater is excluded. However, there is a specific section in the policy that deals with situations where the peril of water is excluded. It states,

> This Policy does not insure against loss or damage caused by or resulting from
>
> . . . . .
>
> Q. Water
> 1. Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
> 2. Mudslide or mudflow;
> 3. Water under the ground surface pressing on, or flowing or seeping through:
> a. Foundations, walls, floors or paved surfaces;
> b. Basements, whether paved or not; or

4. Even if the Court were to consider St. Paul's interpretation reasonable, there would be two reasonable interpretations of the exclusion and the Court must rule in favor of the insured. *Blaine Constr. Co.*, 171 F.3d at 354.

5. St. Paul argues that the "unless caused by a peril not otherwise excluded by this policy" language modifies the phrase "rust or corrosion" so that the provision would read: 'this policy does not insure against loss or damage caused by or resulting from ... rust or corrosion ... unless [the rust or corrosion is] caused by a peril not otherwise excluded by this policy.' However, the Court is persuaded by Davidson's assertion that the "unless caused by a peril not otherwise excluded by this policy" language modifies "loss or damage" such that it reads: 'this policy does not insure against loss or damage caused by or resulting from ... rust or corrosion ... unless [the loss or damage is] caused by a peril not otherwise excluded by this policy.' The Court finds that this is the only logical conclusion because if St. Paul's interpretation were used for one of the other exclusions, that exclusion would read: 'this policy does not insure against loss or damage caused by or resulting from ... inherent nature ... unless [the inherent nature is] caused by a peril not otherwise excluded by this policy.' This would result in an impossibility since the inherent nature of a thing could not be externally caused by a peril. Therefore, Davidson's interpretation is the only one which logically flows from the language and structure of the policy.

c. Doors, windows or other openings.

But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss.

The heading of this exclusion is "water," and a layperson reading the policy would look to this provision to find whether water is excluded from coverage. Water flowing from a corroded water heater bears no similarity to the specific provisions of this exclusion. The enumeration of specific instances where the peril of water would not be covered evinces the consideration by the Parties that certain water damage would be covered. If not, then the section would merely state that it excludes "water" without any further specification. Absent specific exclusion of water damage as listed in the policy, losses associated with water are included in the policy. Therefore, the Court finds that the damage caused by the water flowing from the water heater was a covered loss not excluded by the plain meaning of the policy's language.

Next, St. Paul argues that the loss should be excluded because it was caused by leakage of contents. The policy states,

This policy does not insure against loss or damage caused by or resulting from ... leakage of contents ... unless caused by a peril not otherwise excluded by this policy.

As discussed above, the Court finds that the specificity of subsection Q defines the exclusion of water. Since the water in this case does not fit into the parameters of subsection Q, it is not excluded under the policy. Reading the "leakage of contents" exclusion to cover this scenario would be a forced interpretation which this Court may not undertake. *See ShoLodge, Inc. v. Travelers Indemnity Co. of Ill.,* 168 F.3d 256, 259 (6th Cir.1999).

██ Further, St. Paul also points to the exclusion for faulty workmanship. This exclusion states that

This Policy does not insure against loss or damage caused by or resulting from latent defect, faulty material, **faulty workmanship**, inherent nature, gradual deterioration or wear and tear unless caused by a peril not otherwise excluded by this policy (emphasis added).

The last clause of this provision is fatal to the argument that this exclusion renders the loss not covered. As explained above, the water flowing from the water heater was a peril not excluded from the policy, so the exclusion for faulty workmanship, even if applicable, does not exclude the loss from coverage based upon the last clause of the provision. In essence, the contract itself embodies the concurrent causation doctrine. St. Paul was free to contract to place an absolute exclusion upon faulty workmanship or any other exclusion. In fact, it did so with the pollution exclusion, stating in section O that "[t]his exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss." The exclusion for faulty workmanship is not absolute, and the Court will not extend the exclusion where St. Paul failed to do so itself.

██ Finally, St. Paul contends that the exclusion for electrical disturbances applies. This exclusion states,

This policy does not insure against loss or damage caused by or resulting from ... electrical disturbances ... to electrical appliances or device of any kind (including wiring) due to electrical currents artificially generated, unless fire or explosion ensues and then only for the loss or damage caused by such ensuing fire or explosion.

This exclusion is very specific—electrical disturbances are excluded when caused by

electrical currents artificially generated. The plain language suggests this provision covers scenarios such as electrical surges. In this case, the electrical disturbance occurred because of water flowing onto the bus duct. The Court finds the reasoning in *Continental Insurance Company v. Arkwright Mutual Insurance Company* persuasive. 102 F.3d 30 (1st Cir.1996). In *Continental Insurance*, the First Circuit held that water penetrating an electrical device and resulting in an arcing event was an incident caused by water and not excluded as an electrical disturbance. *Id.* at 37–38. The facts of the current case do not fit into the plain language of this exclusion.

Based upon the above discussion, the Court finds that a substantial and proximate cause of the loss in this case was the water which flowed onto the bus duct. Therefore, the covered peril of water, despite other factors leading to the loss which might have been excluded, renders St. Paul liable on this policy under Tennessee law's application of the concurrent causation doctrine (and, in the Court's opinion, would similarly create liability under an efficient proximate cause analysis).

Based upon the above discussion, the Court finds that summary judgment on the issue of coverage is warranted and GRANTS Davidson's motion for partial summary on the issue of coverage. The above analysis applies equally to St. Paul's motion for summary judgment. Therefore, the Court finds that as a matter of law, the loss sustained by Davidson is covered under the insurance policy and DENIES St. Paul's motion for summary judgment on this point.

### 2. Toilet overflow

In response to St. Paul's motion for summary judgment, Davidson attempts to create an issue of fact regarding the source of the water. As discussed above, the loss is covered under the policy even if the water originated from the water heater. The loss would be equally covered if the water originated from an overflowing toilet. Either scenario presents a fortuitous event causing water damage. Therefore, any factual discrepancy as to the source of the water is not material to the Court's analysis and does not preclude summary judgment being entered on the issue of coverage.

### B. Demolition and Increased Costs of Construction

■ Davidson filed a Motion For Partial Summary Judgment On The Interpretation Of The Demolition And Increased Cost Of Construction Coverage on July 11, 2000. Davidson seeks recovery of the costs incurred when building inspectors of the City of Miami Beach inspected the Hotel and required compliance with numerous building code provisions. The applicable provision in the policy states,

J. Demolition and Increased Cost of Construction

In the event of loss or damage under this policy that causes the enforcement of **any law or ordinance** in effect at the time of covered loss, regulating the construction, repair or use of property, this Company [St. Paul] shall be liable for:

1. the cost of demolishing the undamaged property including the cost of clearing the site;

2. the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

3. increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site intended for the same occupancy, and limited to the costs that would have incurred in order to comply with the mini-

mum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site....

4. any increase in Extra Expense, arising out of the additional time required to comply with said law or ordinance.

St. Paul seeks to avoid liability for these costs based upon three arguments: (1) because there was not a covered loss under the policy, St. Paul cannot be held liable for the costs associated with code compliance; (2) the language of the policy regarding demolition and increased costs of construction does not create liability; and (3) St. Paul should not be held liable for public policy reasons. The Court considers each of these arguments in turn.

Because the Court finds that a covered loss occurred based upon the facts set forth by the Parties, the prerequisite for this section is met. Therefore, analysis of the demolition and increased costs of construction provision is applicable.

The language of this provision is clear. The provision applies to the "enforcement of any law or ordinance in effect at the time of covered loss." The breadth of the provision is not diminished by any limiting language regarding the "grandfathered" status of code violations, as St. Paul would have the Court hold. The main limitation upon this provision is the causal connection required between the loss and the enforcement. Davidson has shown this causation through deposition testimony of several building officials involved in the inspection process. The testimony makes clear that, in the first place, the inspection occurred only because of the incident giving rise to liability and, secondly, the thoroughness of the inspection was also a result of the incident. The Court finds that the proximate cause of the inspection was the February 16, 1998, event, and therefore, that the plain language of this provision renders St. Paul liable for costs associated with code compliance.

St. Paul also argues that finding liability on this point would be contrary to public policy. In particular, St. Paul asserts that the effect of such liability upon an insurer would serve as an incentive for the insured to forego correcting code violations, including those related to life safety, in hopes that a fortuitous event will occur which will trigger liability upon the insured. The Court finds this argument unpersuasive for several reasons. The argument is based upon an assumption that in foregoing code compliance, an insured will ignore the potential tort liability it would face from its guests because of dangerous, noncompliant conditions. St. Paul argues that an insured would be encouraged to risk liability for dangerous conditions, on the chance that a covered event will occur. This proposition is difficult to accept, especially when one notes that the insurance policy at question here only covers fortuitous events. St. Paul's argument also assumes that municipal inspections are wholly ineffective and serve no deterrent influence upon innkeepers, but rather that innkeepers can ignore code compliance in the hope, again, of the occurrence of a fortuitous event. Finally, St. Paul also assumes that innkeepers would intentionally ignore code violations. Even if this is so and a public policy concern arises, it must be balanced against the public policy concern of protecting benefits for which parties contract where, as here, one party does all it can (i.e., getting assurances from a previous owner that a building being purchased is code compliant, obtaining certification from independent engineers, etc.) and another party refuses to fulfill its bargained-for obligations. The Court refuses to entertain such an exercise. Simply, if St. Paul wished to avoid liability, it could have done so through the language of the contract.

For these reasons, the Court finds that summary judgment is appropriate on the question of St. Paul's liability for demolition and increased cost of construction and GRANTS Davidson's motion. The Court notes, however, that the extent of this liability is a question reserved for the trier of fact.

## C. Business Interruption

 St. Paul also moves the Court for partial summary judgment on the breadth of liability for business interruption. Section C of the policy states

Subject to all terms, conditions and stipulations of the policy and for the amount of liability listed in the Coverage Summary, this policy **is extended to cover** business interruptions as follows:

A. Loss resulting from necessary interruption of business conducted by the Insured and **caused by** loss, damage or destruction by any of the perils covered herein during the term of this policy to real and personal property . . . .

(emphasis added). The Court finds the emphasized phrases decisive of this issue. First, the language of the Business Interruption provision states that it extends the coverage of the policy. The business interruption coverage is thus an added layer of insurance which creates liability upon the insurer. Furthermore, the plain meaning of the "caused by" language, as stated in the section on demolition and increased costs of construction, is satisfied by the facts of this case. There is no indication that the "caused by" language

should be interpreted any differently in this section of the policy, particularly when noting that a Court must interpret a contract as a whole. *Mid–South Title,* 840 F.Supp. at 526. Based upon the plain language of the business interruption provision, the Court finds that St. Paul is liable for the business interruption resulting from the enforcement of the building code. According to the terms of the policy, this liability is limited to the time "required with the exercise of due diligence and dispatch" to repair the damage. This restriction necessarily involves an inquiry into the reasonableness of the speed of Davidson's efforts to fix the problems and is, therefore, a question reserved for trial. Again, the absence of express exclusion of business interruption coverage for costs associated with ordinance enforcement (coverage which is contemplated by the language and structure of the policy) dictates this Court's conclusion. Neither the section on business interruption nor the provision for coverage of code enforcement expressly excludes coverage for business interruption under the present facts.[6]

## D. Bad faith refusal to pay and the Consumer Protection Act

 In the November 6, 2000, Order of this Court, both Parties were allowed to file supplements to their pending motions for summary judgment. In its supplement, St. Paul raised for the first time a motion for summary judgment on Davidson's claims for bad faith failure to pay (count 2 in the Complaint) and violation of

---

**6.** St. Paul also desires to limit its coverage based upon the "Interruption by Civil Authority" provision. A plain reading of this provision, however, reveals that this provision does not apply to the facts of this case. The provision states, "[t]his policy is extended to include actual loss as covered hereunder, sustained during the period of time, not exceeding two weeks, when as a direct result of a peril insured against, **access** to the premises

in which the property is located is prohibited by order of civil authority" (emphasis added). This provision controls access, not use. There appears no contention in the record that Davidson was denied access to the hotel; rather, it was denied use of the hotel for business reasons. St. Paul has failed to adequately explain why this provision applies to the facts of this case.

Tennessee's Consumer Protection Act (count 3 in the Complaint). Davidson has moved to strike this supplement, arguing that the Court's Order only allowed supplementation to the existing arguments for summary judgment as contained in the pending motions and not new arguments. While the Court did not intend for new issues to be raised, St. Paul's interpretation of the Court's Order is not wholly without merit. However, the Court finds that the issues raised in St. Paul's supplement depend heavily upon facts that appear from the record to be highly contested. Therefore, summary judgment would not appear to be appropriate on these issues, and the Court should not address these issues without a full response from Davidson. Noting that the deadline for filing motions for summary judgment has passed, the Court GRANTS Davidson's motion to strike. Issues relating to counts 2 and 3 of the Complaint are reserved for trial.

## IV. Conclusion

For the reasons stated above, Davidson's motions for partial summary judgment on the issues of coverage and demolition and increased costs of construction are both GRANTED. St. Paul's motion for partial summary judgment is DENIED. Davidson's motion to strike is GRANTED.

### ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE THE PAULSEN DEPOSITION TESTIMONY CHANGE AS TIME–BARRED BY RULE 30(e) AND MOTION FOR DISCOVERY SANCTIONS PURSUANT TO RULE 37

Before the Court is Plaintiff Davidson Hotel Company's Motion To Strike The Paulsen Deposition Testimony Change As Time-barred By Rule 30(e) And Motion For Discovery Sanctions Pursuant To Rule 37 filed on December 27, 2000. Defendant St. Paul Fire and Marine Insurance Company filed a Response to this motion on January 2, 2001. The Court held a hearing on the matter on January 11, 2001.

## I. Background

The facts as presented in the written material and testimony at the hearing are uncontested. On February 22, 2000, the deposition of Jon Paulsen, the underwriter for Plaintiff's policy with the Defendant, was taken by Plaintiff. As part of his testimony and in response to a question from Plaintiff, Mr. Paulsen stated his opinion that the loss suffered by Plaintiff was covered under the policy.[1] Davidson included this testimony in its motion for summary judgment. Mr. Paulsen testified to this Court that after the conclusion of the deposition, Defendant's counsel asked him if he was aware of the faulty workmanship exclusion and that he should take a look at that provision. Mr. Paulsen testified that upon reviewing the faulty workmanship exclusion he then concluded that the loss was not covered. Defendant's counsel informed the Court that the transcript of the deposition was received on March 7, 2000, but not sent to Mr. Paulsen for review until April 17, 2000. Mr. Paulsen signed and returned an errata sheet to Defendant's counsel on May 17, 2000, inserting the word "no" before the word "coverage" in his testimony about coverage. This errata sheet was held by Defendant's counsel and not made known to Plaintiff. Defendant's counsel testified that the nondisclosure of the errata sheet became known either the day before oral arguments or immediately prior to oral

---

1. The question was actually phrased in terms of a hypothetical with the exact facts of the case before the Court.

arguments on the Parties' motions for summary judgment. The first time Plaintiff was made aware that Mr. Paulsen had changed his testimony was in the hearing on the motions for summary judgment held by this Court on December 15, 2000. During the hearing, Plaintiff's counsel stated to the Court that Mr. Paulsen had admitted coverage. In his argument, Defendant's counsel stated that Mr. Paulsen had changed his testimony. This resulted in Plaintiff's counsel returning to his office and searching his files for an errata sheet to Mr. Paulsen's deposition and then, finding none, inquiring of Defendant's counsel the basis for his statements to the Court. A copy of Mr. Paulsen's errata sheet was first supplied to Plaintiff on December 19, 2000. In a letter dated December 20, 2000, Defendant's counsel informed Plaintiff's counsel that errata sheets to fourteen (14) depositions had not been provided to Plaintiff. Plaintiff then filed the current motion.

## II. The timeliness of the witness review

 Federal Rule of Civil Procedure 30(e) provides that

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changed in form or substance, to sign a statement reciting such changed and the reasons given by the deponent for making them.

Both sides agree that the corrections by Mr. Paulsen were not made within the time limits set forth in Rule 30(e). The transcript of the deposition was made available on March 7, 2000, and the errata sheet was not completed and signed until May 17, 2000. Therefore, the errata sheet does not comply with the requirements of Rule 30 and is hereby STRICKEN from

the Court's consideration. The errata sheet is excluded from trial.

## III. Sanctions

 Plaintiff has also moved the Court for sanctions pursuant to Rule 37. Rule 37 provides for appropriate sanctions by a court when a party fails to fully adhere to the disclosure requirements unless the failure was substantially justified or other circumstances make the award of sanctions unjust. Fed.R.Civ.P. 37(b)(2). In the present case, Defendant's counsel withheld an errata sheet for over seven (7) months that changed the testimony of the witness from an affirmative answer to a negative one. At a minimum, Defendant's counsel admits that he knew the day before the December 15, 2000, oral arguments that the errata sheet had not been disclosed. Defendant's counsel also knew that Plaintiff had relied upon the testimony of Mr. Paulsen in its motion for summary judgment. Failure of Defendant's counsel to inform Plaintiff's counsel of the existence of the errata sheet prior to oral arguments resulted in Plaintiff's counsel making a representation to the Court that Mr. Paulsen had admitted coverage. Defendant's counsel then represented to the Court that Mr. Paulsen's testimony had changed. Defendant's counsel did not point out to the Court that he had failed to disclose the errata sheet to Plaintiff's counsel.

Defendant's counsel argues that the nondisclosure was harmless since Mr. Paulsen's testimony was an opinion on the ultimate question of coverage which is a question the Court must decide and would not be admissible before the Court. In fact, St. Paul filed a motion to strike reference to this testimony in its motion of August 29, 2000. Regardless of St. Paul's subjective conclusion about the admissibility of the material, the Court had not yet ruled on St. Paul's motion to strike. Therefore, the material remained before

the Court, and the argument that St. Paul's belief that the testimony would be stricken offers no justification for its behavior.

Defendant's counsel argues that Rule 37 sanctions are inappropriate since Rule 37 requires an underlying motion to compel. The Court considers that the interplay of Rules 37, 26, and 11, and the inherent powers of this Court to ensure the fair and efficient administration of justice grant it the power to issue sanctions in this scenario. Absent the oral arguments on the motions for summary judgment, the changed testimony would only have come to light at trial when the witness would have directly contradicted his earlier testimony (even if such testimony would be subject to evidentiary objections at that point). While this is always a risk, the Federal Rules of Civil Procedure are explicitly structured to avoid surprise when, as here, proper disclosure alerts the parties to potential changes in testimony or facts. In the Court's opinion, this is exactly the type of situation the rules of disclosure are designed to prevent.

The Court finds that St. Paul's behavior is clearly contrary to the requirements of the Federal Rules of Civil Procedure inasmuch as it directly affronts the goal of full and fair disclosure in discovery. The Court ORDERS Defendant to pay the reasonable attorneys' fees and expenses incurred in bringing Plaintiff's motion to strike and for sanctions before this Court.