**CHATTANOOGA BANK ASSOCIATES and Suntrust Bank Plaintiffs,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND Defendant.**

**No. 1:03–CV–219.**

United States District Court, E.D. Tennessee, at Chattanooga.

Jan. 21, 2004.

Tracy C. Wooden, Wooden, Ray & Scarborough, Chattanooga, TN, for Plaintiffs.

R. Jonathan Guthrie, Patrick, Beard, Schulman & Jacoway, Chattanooga, TN, Clayton H. Farnham, Brian T. Moore, Drew, Eckl & Farnham, Atlanta, GA, for Defendant.

## MEMORANDUM AND ORDER

EDGAR, Chief Judge.

The plaintiffs, Chattanooga Bank Associates ("Bank Associates") and SunTrust Bank ("SunTrust"), have sued to recover insurance benefits for costs incurred following two fires at an insured property, as well as statutory bad faith penalties pursuant to Tenn.Code Ann. § 56–7–105, based on an insurance policy issued by the defendant, Fidelity and Deposit Company of Maryland ("Fidelity"). [Court File No. 1, exh. A]. Fidelity removed the case from the Chancery Court of Hamilton County asserting jurisdiction pursuant to 28 U.S.C. § 1332. [Court File No. 1]. Bank Associates and SunTrust now move for summary judgment. [Court File No. 3]. Fidelity has responded to this motion [Court File No. 18] and numerous additional briefs have been filed by both the plaintiffs and the defendant [Court File Nos. 25, 34, 35, 38].

### I. Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV.P. 56(c). In ruling on a motion for summary judgment, the Court must view

the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir.2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249, 106 S.Ct. 2505; *National Satellite Sports*, 253 F.3d at 907.

## II. *Facts*

The parties do not dispute the facts relevant to the resolution of this motion. On June 6, 2002, and again on June 30, 2002, fires were experienced on the second floor of the insured property, 737 Market Street, Chattanooga, Tennessee. This property, known as the Chattanooga Bank Building ("the building"), at all relevant times, was insured by Fidelity, pursuant to policy number CPP0009715–00 ("the policy").

After the fires, the building was inspected by Chief Building Inspector Jerry Moody, Assistant Fire Marshall David L. Walker, and Electrical Inspector Don Fowlkes, and found to be in violation of certain building codes. The discovery of these violations led Chattanooga City Court Judge Walter Williams to issue an order requiring Bank Associates to immediately act to correct the violations. [Court File No. 4, exh. C]. The violations addressed in Judge Williams's order included "damaged and non-code electrical wiring and fixtures, inoperable and non-code fire alarm system, non-code elevator emergency system, damaged and non-code stairway lighting and emergency signage, defective standpipe valves, and other non-code matters . . . ." [Court File No. 4, exh. C at 1]. It is unclear which, if any, of these cited violations occurred in areas impacted by the fire, however, such a factual determination is not necessary to resolve this motion. Bank Associates and SunTrust argue that pursuant to the policy, Fidelity is liable for **all** code violations discovered during the inspections, regardless of their relationship to the fire.

The parties do not dispute that terms of the insurance contract. The policy contains the following two clauses relevant to the Court's analysis:

7. *Perils Insured Against*

This coverage part insures against all risk of direct physical loss of or damage to property described herein including general average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

[Court File No. 1, exh. A at 9].

14. *Demolition And Increased Cost of Construction*

In the event of loss or damage under this coverage part that causes the enforcement of any law or ordinance regulating the construction or repair of

damaged facilities, the company shall be liable for:

A. The cost of demolishing the undamaged facilities including the cost of clearing the site;

B. The proportion that the value of the undamaged part of the facility bore to the value of the entire facility prior to loss;

C. Increased cost of repair or reconstruction of the damaged and undamaged facility on the same or another site and limited to the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. Coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of suspension of operations.

However, the company shall not be liable for any increased cost of construction loss unless the damaged facility is actually rebuilt or replaced[.]

[Court File No. 1, exh. A at 12 & 13].

### III. *Analysis*

 This case is before the Court pursuant to diversity jurisdiction, thus, the insurance policy at issue must be interpreted according to Tennessee law. Tennessee law provides that an insurance policy shall be interpreted using "the same rules of construction and enforcement as apply to contracts generally." *McKimm v. Bell,* 790 S.W.2d 526, 527 (Tenn.1990). One such rule of construction requires that the contract must be construed as a whole. *English v. Virginia Surety Co.,* 196 Tenn. 426, 268 S.W.2d 338, 340 (1954). Another provides that exclusionary clauses are to be strictly construed against the insurer when drafted by the insurer. *Palmer v. State Farm Mut. Auto. Ins. Co.,* 614 S.W.2d 788, 789 (Tenn.1981). Although this Court must look to the Tennessee legislature and courts when interpreting contracts under Tennessee law, aside from

rules of construction, the parties have not directed the Court to any Tennessee case law or statute which provides guidance in this case.

The plaintiffs' motion for summary judgment and supplemental briefs, set forth their contention that whether the fire actually damaged the areas where the code violations were discovered is immaterial to the question of liability because, but for the fires, the violations would not have been discovered. The narrow legal question contained in the plaintiffs' argument has been examined three times by district courts.

### A. Decisions by United States District Courts

In 1997, the United States District Court for the Northern District of Texas examined the language of an insurance contract, similar to that which appears in the relevant clauses in this case. *Commonwealth Ins. Co. v. Benihana of Tokyo, Inc.,* No. 3:96–CV–0826–R, 1997 WL 361617 (N.D.Tex. June 19, 1997). *Benihana* involved a 1995 restaurant fire which caused direct damage to four ventilation hoods, but resulted in the discovery of code violations related to an additional sixteen ventilation hoods located in areas of the restaurant not damaged by the fire. *Id.* at *1. The court interpreted a contract with the following clause:

Subject to the terms, conditions, and limitations of this Policy including endorsements thereon, in the event of loss or damage by a peril insured under this Policy that causes the enforcement of any law or ordinance regulating the construction or repair of damaged facilities, this Company shall be liable for:

(c) the increased cost of repair or reconstruction of the damaged and undamaged portion of the facility on the same or another site but limited to the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site . . . .

*Id.* at *2. The court concluded that the inspection, during which it was discovered that sixteen ventilation hoods violated fire codes, could be considered the "cause" of the enforcement. *Id.* at *3. The *Benihana* court provided the following rationale:

[w]hile it is true that the fire department may have conducted an inspection at any time, the fact is that the inspection was triggered by the occurrence of the fire. Moreover, the fact that the code may have been applicable before the fire is irrelevant since the bylaw does not specify that the regulation being enforced be newly applicable or that the fire hazard not have previously existed. Instead the language simply requires the enforcement of *any* law or ordinance, regardless of whether the hazard or violation was preexisting.

*Id.* at *3 (emphasis original).

Two years later, the United States District Court for the Middle District of Pennsylvania examined similar language and reached the opposite conclusion. *St. Paul Fire and Marine Ins. Co. v. Darlak Motor Inns, Inc.*, No. 3:97-cv-1559, 1999 U.S. Dist. LEXIS 23283 (M.D.Pa. March 9, 1999), *affirmed without opinion*, 205 F.3d 1330 (3d Cir.1999). The *Darlak* court was presented the question of whether code upgrades for elevators, emergency lighting, smoke detectors, electrical systems, air handlers, panic devices, and emergency generators were covered by the insurance policy where the damage directly caused by the fire was limited to six hotel rooms. *Id.* at *3 n. 1. The relevant insurance

contract language in *Darlak* included the following clause:

[i]n the event of loss or damage under this policy that causes the enforcement of any law or ordinance in effect at the time of the covered loss, regulating construction, repair or use of property, this company shall be liable for:

3) increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site intended for the same occupancy, and limited to the costs that would have [been] incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.

*Id.* at *10-11. The *Darlak* court analyzed the contract language by first noting that the policy granted "coverage for 'Direct Physical Loss or Damage to Property Insured'" and applying the policy grant to limit other relevant clauses. *Id.* at *12. The court further explained as follows:

While it is true that these violations may have remained undiscovered if not for the fire, the fire did not cause the enforcement of the code provisions because the violations found by . . . [the inspector] existed independent of the fire damage. Stated differently, the fire did not cause the conditions that rendered the Darlak Motor Inn to be out of compliance with the code.

*Id.* at *12. The *Darlak* court also examined the *Benihana* decision and found it to be "unpersuasive." *Id.* at *16.

The United States District Court for the Western District of Tennessee addressed this same issue without reference to the previous conflicting decisions. *Davidson Hotel Co. v. St. Paul Fire and Marine Ins. Co.*, 136 F.Supp.2d 901 (W.D.Tenn.2001). This case involved a question of liability following a sprinkler system malfunction

which caused water damage inside the hotel. *Id.* at 905. The *Davidson Hotel* court was presented with contract language nearly identical to the language in *Benihana, Darlak,* and currently before this Court.

J. Demolition and Increased Cost of Construction

In the event of loss or damage under this policy that causes the enforcement of any law or ordinance in effect at the time of covered loss, regulating the construction, repair or use of property, this Company [St. Paul] shall be liable for:

. . . . .

3. increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site intended for the same occupancy, and limited to the costs that would have incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site . . . .

*Id.* at 910–911 (emphasis omitted).

The *Davidson Hotel* court found that liability extended to the cost of upgrading code violations discovered during an inspection following the sprinkler incident because "in the first place the inspection occurred only because of the incident giving rise to liability and, secondly, the thoroughness of the inspection was also a result of the incident." *Id.* at 911. The court dismissed the argument that finding

liability would be contrary to public policy by suggesting it is not realistic to think that an insured would forgo compliance with building and fire codes to wait for the occurrence of an insured event, particularly in light of the potential tort liability for one who makes an economic decision that jeopardizes safety.[1]

### B. The Chattanooga Bank Building

■ As set forth in the factual summary above, in this case, the loss experienced at the Chattanooga Bank Building was contained to the second floor of the building. Fidelity asserts that under the language of the insurance contract, particularly clause number fourteen entitled "Demolition and Increased Cost of Construction," it is not liable for the cost of upgrading code violations which were discovered in areas not affected by the fires. Fidelity further argues that the discovery of code violations in non fire affected areas, even when the inspection would not have taken place in the absence of the fires, fails to create liability under the terms of the insurance contract. The Court agrees with Fidelity.

Bank Associates and SunTrust would have the Court read the contract as providing insurance against the discovery of code violations where the violations did not result from the fires. The Court does not read the contract as intending such coverage, nor does this Court believe that it would be consistent with the public policy concern for public safety to permit a build-

---

1. Fidelity's brief argues that the *Davidson Hotel* court's analysis regarding Tennessee's concurrent causation doctrine is inapplicable to this case. [Court File No. 34]. Bank Associates and SunTrust agree, but suggest that a different outcome will result. [Court File No. 35]. The Court notes that the discussion of concurrent causation in *Davidson Hotel* was distinct and separate from the portion of that opinion discussing liability for code violations discovered in areas unaffected by the water damage. *Davidson Hotel Co.,* 136 F.Supp.2d at 905–908. The doctrine of concurrent causation, while helpful in the examination of liability where more than one peril contributed to a loss, cannot aid this Court when addressing whether areas untouched by damage due to any peril, must be upgraded based on a subsequent inspection. Put another way, this Court does not consider a building inspection to be a peril, thus, analysis regarding the concurrent causation doctrine is not appropriate in this case.

ing owner to insure against the discovery of existing code violations.

In reaching this conclusion the Court recognizes that this result is inconsistent with the holdings of the *Benihana* and *Davidson Hotel* courts and joins the reasoning put forth by the *Darlak* court. This conclusion is reached through examination of the contract language. As stated earlier, the relevant portions of the policy are as follows:

7. *Perils Insured Against*

This coverage part insures against all risk *of direct physical loss of or damage* to property described herein including general average, salvage, and all other charges on shipments covered hereunder, except as hereinafter excluded.

[Court File No. 1, exh. A at 9 (emphasis added)].

14. *Demolition And Increased Cost of Construction*

In the event of loss or damage under this coverage part that *causes* the enforcement of any law or ordinance regulating the construction or repair of damaged facilities, the company shall be liable for:

. . . . .

C. Increased cost of repair or reconstruction of the damaged and undamaged facility on the same or another site and limited to the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. Coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of suspension of operations.

However, the company shall not be liable for any increased cost of construction loss unless the damaged facility is actually rebuilt or replaced;

[Court File No. 1, exh. A at 12 & 13 (emphasis added)].

The Court first looks to clause seven of the contract, entitled "Perils Insured Against" in order to examine whether liability under the contract extends to code upgrades required in areas not damaged by the fires. This clause, which describes generally the risks insured against, clearly limits the insurer's liability to "all risks of *direct physical loss of or damage to* property." [Court File No. 1, exh. A at 9 (emphasis added)]. The Court concludes that this language acts to limit the liability of the insurer to only those cases where the loss or damage results from the peril.

Next, the Court looks to clause fourteen of the contract, including subpart C. Of particular relevance to this analysis is the precondition that the clause applies "[i]n the event of loss or damage under this coverage part that *causes* the enforcement of any law or ordinance regulating the construction or repair of damaged facilities." [Court File No. 1, exh. A at 12 (emphasis added)]. The plaintiffs contend that because the inspection was triggered by the fire and resulted in the enforcement of the building code, the fire was the cause of the enforcement of the building code. However, this Court disagrees. Although the violations might have remained undiscovered if not for the fire, the violations in question existed independent of the fire and the fire cannot be said to have "caused" the enforcement of a building code, which was at all times subject to enforcement.

In addition to the precondition contained in clause fourteen, subpart C also suggests that the Court's interpretation of the contract reflects the intent of the parties. Specifically, subpart C refers to the "increased cost of repair or reconstruction of the damaged and undamaged facility," although the clause acknowledges some liability as to portions of an undamaged facility, this liability is limited to repair or

reconstruction. Upgrades to undamaged portions of a building simply do not amount to repair or reconstruction. Such a clause would more likely apply to a situation where the damage occurred to a degree that required total or partial replacement of an insured building with a new building or part of a building. Such new construction, and any modification to the undamaged structure to allow compatibility between the new and old, would necessary be required to comply with current building codes.[2] Therefore the "repair or reconstruction" language can be interpreted consistently with the limitations evident in clause seven and the other portions of clause fourteen.

■ The parties do not dispute that a sum of $91,582.43, was paid by Fidelity to the plaintiffs for damage incurred during the two fires. It is evident from the pleadings and affidavits, however, that a genuine issue of material fact remains regarding whether each code violation, was in fact in an area of the building damaged by the fires. Each claim of liability must be individually examined by the trier of fact because the Court holds that the mere discovery of a code violation during an inspection after a fire is insufficient to create liability under the policy. The plaintiffs must show at trial that the fire, or the attempts to extinguish it, created the need to repair or reconstruct some portion of the insured property in a manner consistent with current building codes.

## IV. *Conclusion*

For the reasons stated above, the plaintiffs' motion for summary judgment [Court File No. 3] is DENIED. A genuine issue of material fact remains regarding the degree, if any, to which each code violation upgrade was required due to repair or reconstruction of an area impacted by the two fires at the Chattanooga Bank Building.

SO ORDERED.

---

2. Historically, insurance companies have not been considered liable for the difference in cost between rebuilding a property destroyed by fire as it was, and the cost of rebuilding in a manner that complies with current building codes. *See* 12 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE §§ 175:67 & 176:66 (3d ed.1998). It appears to be precisely this concern that has lead to the inclusion of the clause this Court now analyzes. It is consistent with this Court's interpretation that the historical concern is addressed by the clause, while at the same time not creating liability as to the issue now before the Court.