**ALLSTATE INSURANCE COMPANY,**
**Plaintiff–Appellee,**

v.

**Bobby L. WATTS, and wife, Jeanne Watts, and Dewey Crafton and wife, Louise Crafton, Defendants–Appellants.**

Supreme Court of Tennessee,
at Jackson.

June 10, 1991.

Robert T. Keeton, Jr., Robert T. Keeton, III, Huntingdon, Charles L. Hicks, Camden, for defendants-appellants.

Leo Bearman, Jr., M. Scott Willhite, Memphis, David F. Hessing, Paris, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

This declaratory judgment litigation was filed by Allstate Insurance Company, Plaintiff-Appellee, to determine whether liability under a homeowner's policy issued to Dewey and Louise Crafton was negated by an exclusion for injuries arising out of the maintenance of a motor vehicle. The trial court, using the concurrent cause doctrine, held that Allstate was obligated to provide coverage to the policyholders. The Court of Appeals, using the chain of events doctrine, reversed. For the reasons set forth below, we find that the exclusion does not apply and, accordingly, reinstate the judgment of the trial court.

The insureds owned an "Allstate Deluxe Homeowner's Policy" which was issued to them by the Plaintiff, Allstate Insurance Company. The policy contains an exclusion which states: "We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy ... loading or unloading of any motorized land vehicle or trailer." The exclusion is contained in a section of the policy that provides: "Allstate will pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy."

The facts in this case are essentially undisputed. In December, 1987, Dewey Crafton, the insured, was assisting Joseph Cole in replacing the brake shoes on Cole's truck. Because of rainy weather, the truck was backed partially into Crafton's garage which was attached to his house. The two men had been working on the truck for approximately an hour and a half and were experiencing difficulty in removing all of the lug nuts from one of the wheels upon which they were going to replace the brake shoes. Bobby Watts, a friend of Crafton's who had a welding torch in his vehicle, happened to stop by Crafton's garage for a visit while Crafton and Cole were having trouble with the "frozen" lug nuts. After talking to the other men a few minutes and learning of their trouble with the lug nuts, Watts agreed to use his torch to facilitate their removal.

Prior to turning on the torch, Watts inquired of Crafton whether there were any flammable materials in the garage, and was advised that there were none. Watts then applied the torch to one of the lug bolts, but even then the nut could not be removed. Crafton then asked Watts to cut the bolt off with the torch and Watts obliged. As the bolt was being cut, sparks scattered about on the garage floor and

ignited a pan of flammable liquid under the truck approximately five to ten feet away from where the men were working. Turning off the torch, Watts noticed the fire in the pan and called Crafton's attention to it. When Crafton picked up the pan and started for the open garage door, he dropped it to the floor due to the heat and inadvertently kicked it, whereupon the flammable liquid splashed onto Watts, igniting his clothes and causing burns.

As a result of his injuries, Watts brought a lawsuit against Crafton in which he alleged that Crafton was negligent in failing to warn him of the presence of the flammable substance after having been asked whether any such substance was in the area, and in picking up the hot pan, dropping it, and kicking it. Allstate then filed this declaratory judgment action after denying insurance coverage, contending that the injuries to Watts arose out of the maintenance of an automobile, and thus fell within the exclusion noted above.

Following a bench trial, the trial court found that there were two causes of the injuries; one, using the torch on the vehicle, which was an excludable risk under the policy and, second, the negligence of Crafton in failing to warn and in ultimately kicking the pan, which was a nonvehicle related risk which would not fall within the exclusion.[1] The trial court concluded that under these circumstances, coverage should be provided. The Court of Appeals reversed, holding that regardless of Craf-

ton's purported negligence, the exclusion applied because the use of the cutting torch was "maintenance" of a vehicle, and was also the efficient and predominating cause of the injuries to Watts. According to the Court of Appeals, "[i]rrespective of whether or not Crafton was guilty of negligence in leaving a pan of flammable liquid in the garage and not so advising Watts, if the sparks from Watts' cutting torch had not set the chain of events in motion, the injuries and damages sustained by Watts would not have occurred." This appeal followed.

## I.

Allstate argues that there is no coverage because the circumstances surrounding the injuries to Watts were all involved in the maintenance of Cole's truck. The argument is advanced that the phrase "arising out of" is sufficiently broad that it denotes the existence of *any* causal relationship. According to Allstate, the chain of events was begun by the maintenance of the truck and without such action no injuries could have occurred. Furthermore, Allstate contends that the placement of the flammable liquid and the failure to warn about it was merely a condition, or at best a remote cause, whereby the injuries to Watts could have taken place. The insured, on the other hand, urges this Court to adopt the approach taken by the trial court. That is, there are two independent causes responsible for the ultimate result, one excludable

---

1. The Chancellor stated:

"From the evidence presented to the Court at the hearing of this matter, it can be reasonably concluded that sparks from the cutting torch caused the pan of flammable liquid to catch fire.

It appears that Crafton could have been negligent in leaving the pan of flammable liquid within close proximity to where the cutting torch was being used, especially when this condition was not related to Watts after specific inquiry. The Court finds the flammable liquid was a proximate cause of the eventual accident and injuries to Watts. However, this condition was a non-vehicle risk under the facts as presented in this case.

The Court also finds that the accident arose in part out of the maintenance of a vehicle. The

use of the cutting torch while maintaining the vehicle was a proximate cause of the injuries to Watts. Such circumstances standing alone would result in noncoverage under the homeowner's policy.

The Court concludes that there were at least two proximate causes of Watts' injuries, namely, the use of the blow torch under the vehicle, an excludable risk under the policy, and the flammable liquid, a nonexcludable risk. The Court is further of the opinion that the efficient and predominating cause of the accident was not the maintenance of the vehicle, but the apparent negligence of Crafton in the placement of the flammable liquid and the failure to warn Watts of the substance."

(using the torch itself in maintaining the vehicle) and the other not excludable (the actions of Crafton in failing to warn and in handling the burning substance).

■ It is well settled that exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured. *Travelers Insurance Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 367 (Tenn.1973). In the *Travelers* case, the insuror had issued a homeowner's policy to a family providing coverage for liability. The policy contained an exclusion for personal liability "arising out of the ownership, maintenance, use, including loading and unloading, of any automobile...." The Court was called upon to construe this language when a passenger was injured after a shotgun discharged while it was being loaded into a vehicle by an insured. The insurer argued that the injury resulted from the "use" of the vehicle. In finding coverage, the Court explained that the "accident could have occurred anywhere, the precise reason why homeowner's insurance is procured." *Travelers*, 491 S.W.2d at 367. The Court also noted that a "mere connection" with the loading of the vehicle was not sufficient to destroy coverage under the facts of the case.

■ In an unreported decision, *Almany v. Nationwide Ins. Co.*, 1987 WL 4745 [2], a section of our intermediate appellate court held that coverage was provided under a homeowner's policy containing an exclusion for damages "arising out of the ownership, maintenance, use ... of a motor vehicle." The case involved an insured who was driving her automobile when it ran out of gas. A friend of the insured drove her to a service station where they filled a gallon jug with gasoline. While attempting to pour the gasoline from the jug into the tank of the car, some of it spilled on the insured's feet and also on the friend from the waist down. The insured used a towel from her car to catch the spilling gasoline and then, in an attempt to dispose of the gasoline-soaked towel, ignited it with a cigarette lighter and threw it onto the ground. When the friend saw the burning towel, she moved toward it in order to stamp out the fire, but instead received substantial burns.

The Court of Appeals in *Almany* noted that the injuries resulted from both vehicle-related and nonvehicle-related causes. The insured's efforts to pour gasoline into her automobile without a funnel was obviously vehicle-related. However, the act of igniting the gasoline soaked towel was not vehicle-related. The Court indicated that a homeowner's carrier should not be relieved from its obligations under a policy unless it has been determined that the injuries did not result, even in part, from a risk for which it provided coverage and collected a premium. *See also, Jorgensen v. Auto–Owners Ins. Co.*, 360 N.W.2d 397, 401 (Minn.App.1985). The Court also opined that the insurer was liable under the "concurrent causation doctrine" which provides that coverage under a liability policy is equally available to an insured whenever an insured risk constitutes a concurrent proximate cause of the injury. Other courts have used this doctrine to hold homeowner's insurance carriers liable for injuries resulting from a combination of vehicle-related and nonvehicle-related causes. *See* generally, Annotation, *Construction and Effect of Provision Exclud-*

---

2. Opinions that are not officially published may be cited in briefs as long as copies are furnished to the Court and adversary counsel, and this rule was complied with in this case. The reference by this Court to an unreported decision is a departure from the general rule that unpublished opinions should not be cited in published opinions. Unfortunately, many of the best opinions of our intermediate appellate courts are unpublished. As Justice Henry stated in

*Pairamore v. Pairamore*, 547 S.W.2d 545, 552 (Tenn.1977), "many outstanding opinions of our intermediate appellate courts are consigned to oblivion and much scholarly research is lost to the profession." In *Almany* Supreme Court review was not sought. Unpublished intermediate court opinions have persuasive force and in *Almany* the research and reasoning of Judge Koch was found to be helpful, thus the citation.

ing *Liability for Automobile Related Injuries or Damage From Coverage of Homeowners or Personal Liability Policy*, 6 A.L.R.4th 555 (1981); 7A J. Appleman, *Insurance Law and Practice* § 4500 at 179–81 (1979); Keeton, *Insurance Law* § 5.5(c) at 553–56 (1988).

An example of how the concurrent causation doctrine works can be found in *State Farm Mut. Ins. Co. v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973), where the Supreme Court of California was confronted with a situation involving an insured who had a homeowner's policy that excluded coverage for damages "arising out of the ownership, maintenance, operation, use ... of any motor vehicle." In *Partridge*, the insured committed two acts of negligence: (1) he filed the trigger mechanism of a pistol to lighten it so that the gun would have a "hair trigger" and (2) while on a hunting expedition, he negligently drove his vehicle over a bump, causing the pistol to discharge and injure a passenger. The first of these negligent acts was covered by the homeowner's policy, and the second was not.

The California Supreme Court held that the insurance company was liable, explaining that although the policy excluded injuries "arising out of the use" of an automobile, the exclusion did not apply when an accident results from the combination of a nonvehicle-related cause and a vehicle-related cause. "Coverage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury." *Partridge*, at 813, 514 P.2d at 125. The Court also stated: "That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of the injury does not nullify any single contributory act." *Id.* at 818, 514 P.2d at 130–31. *Cf. Garvey v. State Farm*, 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704 (1989). The concurrent cause doctrine has been followed in a number of jurisdictions other than in California. *See, e.g., U.S. Fidelity & Guaranty Co. v. State Farm*, 107 Ill. App.3d 190, 63 Ill.Dec. 14, 18, 437 N.E.2d 663, 667 (1982); *LeJeune v. Allstate Ins. Co.*, 365 So.2d 471, 479 (La.1978); *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 921 (Minn.1983); *Eichelberger v. Warner*, 290 Pa.Super. 269, 434 A.2d 747, 751–52 (Penn.1981); *Lawver v. Boling*, 238 N.W.2d 514, 521–22 (Wis.1976). *See also*, 7A J. Appleman, *Insurance Law and Practice* § 4500 at 179–81 (1979); 12 *Couch On Insurance 2d (Rev. ed)* § 44A (1984); Keeton, *Insurance Law* § 5.5(c) at 553–56.

## II.

While there are a variety of ways to analyze the problem before us, this Court is persuaded that there should be coverage in a situation such as in the instant case, where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy. It is true that "arising out of" is an extremely broad phrase, so broad, in fact, that it is difficult to conceive of a rule that draws a justifiable line between coverage and no coverage at any reasonable point. Adopting Allstate's interpretation of "arising out of" to include *any* causal relationship would exclude coverage if, for example, Watts had gone into Crafton's home to retrieve a tool to aid in removing the lug nuts, and fell down a flight of stairs. Arguably, at least, maintaining the vehicle would have set in motion the chain of events that produced the eventual result. That is, but-for the difficulty encountered in maintaining the brakes on the truck, Watts would not have been inside of the home when he fell in order to obtain the tool. The problem with this approach is that cause and effect extend to near infinity. It is for this reason that we reject the "chain of events" theory of application which appears to hinge on a "but-for" theory of causation utilized by the Court of Appeals and urged by Allstate.

■ Moreover, this Court has no quarrel with the finding of the Court of Appeals that the truck was being "maintained" and that the use of the cutting torch on the vehicle caused a fire in the pan of liquid. There is certainly no question that using the torch in the manner described here would constitute an excludable risk under the policy if standing alone. This does not mean, however, that we can simply ignore the presence of other causal factors involved—the placement of the flammable substance, Crafton's purported failure to warn of the substance upon specific inquiry, and the negligence in dropping and kicking the burning liquid—all of which are insured risks that the insuror was willing to accept a premium for *and* are the acts that comprise the basis of the lawsuit brought by Watts against the insured as evidenced by the allegations in the complaint itself. It appears that the complaint is not predicated upon a cause of action or risk which would be excluded by the policy, but rather negligence. See *Engeldinger v. State Auto. & Cas. Underwriters*, 236 N.W.2d 596, 600–01 (Minn.1975). Further, simply because there might arguably be a mere connection between using the torch and the ultimate harm, does not justify a finding of no coverage when other causal factors played a substantial role in producing the loss complained of by Watts. *Travelers*, 491 S.W.2d at 367. The same harm could have resulted had Watts been cutting any number of objects in Crafton's garage with the torch completely unrelated to the truck. *Id.* Coverage is not vitiated because the truck, or the area around it, was merely the situs of the purported negligence.

In summary, we hold that an insurer should not be excused from its obligation under a homeowner's policy unless it has been determined that the loss being complained of did not result in substantial part from a risk for which it provided coverage and collected a premium. We reject the contention that there can be no coverage when the chain of events leading to the ultimate harm is begun by an excluded risk, concluding instead that coverage cannot be defeated simply because excluded risks might constitute an additional cause of the injury. "That multiple causes may have effectuated the loss does not negate any single cause; that multiple acts concurred in the infliction of injury does not nullify any single contributory act." *Partridge*, 109 Cal.Rptr. at 818, 514 P.2d at 130.

For the foregoing reasons, the judgment of the Court of Appeals is reversed and that of the trial court is reinstated at the cost of Allstate. The cause will be remanded to the trial court for collection of costs accrued there, and for any further proceedings which may be appropriate.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.