IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 2000 Session

# TENNESSEE FARMERS MUTUAL INSURANCE COMPANY v. ROGER E. HOSTETLER, JO ANN FINCHER AND JAMES DURHAM DRAKE[1]

A Direct Appeal from the Circuit Court for Lauderdale County
No. 4819; The Honorable Joseph H. Walker, Judge

---

### No. W1999-00368-COA-R3-CV - Filed July 28, 2000

---

This appeal arises from a declaratory judgment action filed in the Lauderdale County Circuit Court by Tennessee Farmers Mutual Insurance Company. The complaint sought a declaration that Tennessee Farmers was not obligated to defend or indemnify its insureds against a wrongful death lawsuit filed by James Drake, executor of the estate of Mattie Lee Drake. After both sides filed motions for summary judgment, the trial court ruled that coverage did not exist under the Personal Liability Insurance Policy and entered summary judgment in favor of Tennessee Farmers Mutual Insurance Company.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which FARMER, J., and LILLARD, J., joined.

Robert B. Vandiver, Jr., Jackson, for Appellant Drake

Charles L. Trotter, Jr., Huntingdon, for Appellee

### OPINION

In this declaratory judgment action, James D. Drake appeals from the order of the Lauderdale County Circuit Court granting summary judgment in favor of Tennessee Farmers Mutual Insurance. For the reasons stated herein, we reverse the decision of the trial court.

---

[1]We have styled this case as it appeared in the trial court; however, Hostetler and Fincher are not parties to this appeal.

## Facts and Procedural History

On March 19, 1996, Mattie Lee Drake was attacked and killed by two rottweiler dogs allegedly owned by Roger Hostetler. On May 3, 1996, James Drake, as Administrator of his mother's estate, filed a complaint against Hostetler asserting claims for wrongful death.

At the time of the attack which led to Mrs. Drake's death, Hostetler was insured under a personal liability insurance policy issued by Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers" or "TFM"). This policy was first issued on January 19, 1989. At the time of its issuance, the policy contained an "intentional acts" exclusion which stated:

> Under Personal Liability Coverage and Medical Payments to Others
> Coverage, we do not cover:
> . . .
> 5. Bodily injury or property damage expected or intended by an insured
> person.

On November 7, 1989, the following endorsement was placed on the insurance policy:

> The Personal Liability and Medical Payments to Others Coverage
> provided by this policy shall not provide coverage arising from or
> in connection with the dog owned by or in the care, custody or
> control of any insured person.[2]

(emphasis added). Both of the above exclusions were part of the policy and in full force at the time of the attack.

Burnie Norman, an independent agent for Tennessee Farmers, testified to the circumstances which led to the dog exclusion being placed on Hostetler's policy. In essence, the dog exclusion was placed on the policy after Mr. Norman, in or around November of 1989, had occasion to view Hostetler's dog and determine that it might, in fact, be a dangerous animal. At that time, Hostetler owned only one dog, a rottweiler named Damien. However, subsequent to the exclusion being placed on the policy, Hostetler acquired two additional rottweiler dogs named Max and Maxine.[3]

On July 15, 1996 Tennessee Farmers filed a complaint for declaratory judgment alleging that no coverage existed under the policy for the dogs that attacked and killed Mattie Lee Drake. TFM sought a declaration that it was not obligated to defend Hostetler against the tort action filed by

---

[2] The parties have referred to this as "the dog exclusion." For the sake of simplicity, we shall refer to the exclusion in the same manner.

[3] Apparently, Max and Maxine were the only two dogs involved in the attack on Mattie Lee Drake. This fact is important to note insofar as these two dogs were acquired by Hostetler after the "bad dog" exclusion was added to his policy.

James Drake, nor was it obligated to pay any judgment rendered against him. TFM's position was based on both the "intentional acts" and "bad dog" exclusions to Hostetler's policy of insurance. The trial court rejected the argument that the intentional acts exclusion served to preclude coverage under the policy. The court found that the attack was neither an expected nor intended act on the part of Hostetler. However, the court found that the bad dog exclusion was applicable and rendered summary judgment in favor of TFM on that basis. The trial court found that it was the intent of the parties to exclude from coverage <u>any</u> dog owned by Hostetler.

The present appeal arises out of the trial court's grant of summary judgment in favor of TFM. The issues for our consideration are whether the "bad dog" and/or the intentional acts exclusion serves to preclude insurance coverage.

## Law and Analysis

Since this case comes before us on a summary judgment dismissal, our standard of review is well settled. Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; <u>Byrd v. Hall</u>, 847 S.W.2d 208, 210 (Tenn. 1993). We review the summary judgment motion as a question of law in which our inquiry is *de novo* without a presumption of correctness. <u>Finister v. Humboldt General Hosp., Inc.</u>, 970 S.W.2d 435, 437 (Tenn. 1998); <u>Robinson v. Omer</u>, 952 S.W.2d 423, 426 (Tenn. 1997). We must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. <u>Byrd</u>, 847 S.W.2d at 210-11. If both the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate. <u>Robinson</u>, 952 S.W.2d at 426; <u>Bain v. Wells</u>, 936 S.W.2d 618, 622 (Tenn. 1997).

Additionally, we are mindful of the principles applicable to our review of insurance policies. Issues relating to the interpretation of written contracts involve legal rather than factual issues. <u>See Rapp Constr. Co. v. Jay Realty Co.</u>, 809 S.W.2d 490, 491 (Tenn. Ct. App. 1991); <u>Taylor v. Universal Tire Inc.</u>, 672 S.W.2d 775, 777 (Tenn. Ct. App.1984). Accordingly, issues relating to the scope of coverage and an insurer's duty to defend likewise present questions of law. <u>See Pile v. Carpenter</u>, 99 S.W. 360, 362 (1907); <u>Pennsylvania Lumbermens Mut. Fire Ins. Co. v. Holt</u>, 223 S.W.2d 203, 206 (1949). When, as in the present case, the only issues to be resolved are legal, the scope of our review is well settled.

> "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." <u>Blaylock & Brown Construction, Inc. v. AIU Insurance Co.</u>, 796 S.W.2d 146, 149 (Tenn. Ct. App. 1990). Words in an insurance policy are given their common and ordinary meaning. Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. <u>See e.g.</u>, <u>Moss v. Golden Rule Life Insurance Co.</u>, 724 S.W.2d 367, 368 (Tenn. Ct. App. 1986). Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the

insurance company and in favor of the insured.  <u>Allstate Insurance Co. v. Watts</u>, 811 S.W.2d 883, 886 (Tenn. 1991).

<u>Tata v. Nichols</u>, 848 S.W.2d 649, 650 (Tenn. 1993).

*I. The "intentional acts" exclusion*

The policy of insurance issued to Hostetler contained an exclusion whereby no coverage exists for "bodily injury expected or intended by an insured person."  The trial court concluded that this exclusion was not applicable.  We concur with the decision of the trial court.

In order for the "intentional acts" exclusion to apply, it must be established that the insured intended the act <u>and</u> also intended or expected that injury would result.  <u>Tennessee Farmers Mut. Ins. Co. v. Evans</u>, 814 S.W.2d 49 (Tenn. 1991).  These are separate and distinct inquiries.  <u>Id.</u> Therefore, the threshold question is whether Hostetler intended for the dogs to attack (*i.e,* the act).[4] We find nothing in the record which would support the conclusion that Hostetler intended the act. In this regard, we agree with the trial court's statement on this issue:

> The court finds that the dogs attacking and killing the victim was not an expected or intended act by an insured person. The uncontroverted facts show that the dogs were kept in a pen, although apparently they did escape. The facts established that Hostetler took several actions to keep the dogs inside the pen. His actions may have been negligent, but not intentional in allowing the dogs to attack and kill.

Since there is no basis upon which to conclude that Hostetler intended for the dogs to attack Mattie Lee Drake,  we affirm the trial court's decision that the intentional acts exclusion does not serve to preclude coverage.

*II. "Bad dog" exclusion*

The "bad dog" exclusion serves to preclude coverage for any injuries "arising from or in connection with the dog owned by, . . ., any insured."  The dispute in regard to this exclusion arises out of the language found in the exclusion itself.  Specifically, the exclusion refers to "the dog" in the singular.  At the time the exclusion was added, Hostetler owned only one dog, Damien.  There can be little doubt that the exclusion applies to Damien.  However, at the time of the attack, Hostetler owned three dogs, Damien, Max, and Maxine.  Once Hostetler acquired the additional dogs, the question becomes whether the exclusion also covers them.

---

[4] Contrary to the arguments presented by TFM regarding reasonable foreseeability, we believe that there must be a showing that Hostetler intended for the attack to occur. The <u>Evans</u> case clearly states that the individual must "intend the act."  We do not believe that the foreseeability of the act is dispositive.

In grammatical terms, "the dog" cannot simultaneously apply to three dogs. Clearly, TFM should have amended the language in the exclusion if it had wished to avoid the present scenario.[5] In fact, during a regular renewal of the policy, David Snell, a TFM agent, wrote "exclude dogs - keep exclusion on policy." He testified as to the circumstances of this notation, and he admitted that he was aware Hostetler owned more than one dog. He also testified that the document which contained this notation became part of TFM's official file. Therefore, we are convinced TFM knew or should have known that Hostetler owned more than one dog. Unfortunately, the language of the exclusion was not amended after Hostetler acquired the additional dogs.[6]

TFM contends there is no ambiguity in regards to the present issue because the "intentions and express language of the parties" clearly shows that all subsequently acquired dogs were covered under the exclusion. We do not believe that this assertion is supported by the record. It is clear from the testimony of Burnie Norman, the TFM agent who caused the exclusion to be placed on the policy, that Hostetler only owned one dog at the time the exclusion was added. It is also clear from the testimony that this one dog served as the impetus for the exclusion being added. Through the testimony of David Snell, another TFM agent, we know that TFM knew or should have know that Hostetler owned more than one dog. Whatever intent Tennessee Farmers had in regard to Hostetler's dogs, the language contained in the exclusion is far from clear.

A contract is ambiguous only if it is of uncertain meaning and may fairly be understood in more ways than one. Rogers v. First Tennessee Bank Nat. Ass'n., 738 S.W.2d 635 (Tenn. Ct. App. 1987). Regardless of the conviction with which TFM advances its position, reasonable minds could disagree over the present issue. There can be little debate that, as a general rule, "the dog" will be understood to refer to only one dog. Therefore, even if TFM's assertion that the exclusion applies to all dogs could be accepted, it is very clear that the alternative position is just as easily acceptable. As such, we find ourselves facing an ambiguity in a policy of insurance. The rules for such a scenario are well settled and provide the resolution of the present case. Where the ambiguous language limits the coverage of an insurance policy, as it does in the present case, that language must be construed against the insurance company and in favor of the insured. See Tata, 848 S.W.2d at 650 (citing Allstate Insurance Co. v. Watts, 811 S.W.2d 883, 886 (Tenn. 1991); Purdy v. Tenn. Farmers Mut. Ins. Co., 586 S.W.2d 128, 130 (Tenn. Ct. App. 1979). Accordingly, we find that the "bad dog" exclusion does not apply to the dogs acquired after the exclusion was placed on the policy.[7]

---

[5] The record indicates that the exclusion was amended after the attack to include "any dogs or canines."

[6] TFM has argued that Hostetler is to blame because he did not inform TFM that he had acquired additional dogs and he continued to pay his premiums. Whatever the goal of these arguments may be, they are irrelevant to our consideration of whether the language employed in the exclusion is ambiguous. We believe that the proper focus is on TFM's knowledge as opposed to Hostetler. TFM's failure to amend the language in the exclusion cannot be remedied by pointing the finger at the insured.

[7] We have considered all of the issue raised by TFM in their brief and are of the opinion that they are without
(continued...)

In conclusion, we agree with the trial court that the intentional acts exclusion is not applicable in the present case. However, we find that the "bad dog" exclusion does not apply to Max and Maxine, the dogs acquired after the exclusion was added. As such, to the extent that those dogs were involved in the attack on Mattie Lee Drake, Tennessee Farmers must perform its obligations under Hostetler's policy of insurance.

## Conclusion

For the foregoing reasons, the decision of the trial court granting summary judgment in favor of Tennessee Farmers Mutual Insurance Company is reversed. We remand the case with directions to enter summary judgment in favor of the appellant, James D. Drake, consistent with this opinion. Costs of this appeal are taxed to the appellee, Tennessee Farmers, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

---

[7] (...continued)
merit as they relate to the dispositive issues in this case.