IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2004 Session

# ALLSTATE INSURANCE COMPANY v. WESLEY SCOTT GRIMES, ET AL.

**Appeal from the Chancery Court for Dickson County**
**No. 7906-02     Leonard Martin, Chancellor**

---

**No. M2003-01542-COA-R3-CV - Filed November 8, 2004**

---

This declaratory judgment action was filed by Allstate Insurance Company which seeks a ruling that its named insureds under a homeowners' insurance policy had no coverage and that Allstate had no duty to defend an action brought by a third party seeking damages resulting from the intentional and criminal acts of their son who resided in their home. The insureds' adult son shot his girlfriend at the home of his parents. She filed a tort action against the son and his parents alleging *inter alia* that the parents failed to render aid after the shooting. The policy excludes intentional and criminal acts by an insured. The son was an insured because he resided in the home with his parents. The policy also contains a "joint obligations clause" that excludes coverage for injury which may reasonably be expected to result from the intentional or criminal acts of any insured. Upon summary judgment the trial court held that the parents were not covered and that Allstate had no duty to defend the parents in the underlying tort action. We reverse finding the claim that the parents failed to render aid after the shooting constitutes a claim of separate and independent acts of negligence by the parents to which the exclusion and joint obligations clauses do not apply.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part and Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Timothy V. Potter, Dickson, Tennessee, for the appellants, Lawrence Grimes and Janet Grimes.

Alan M. Sowell, Nashville, Tennessee, for the appellee, Allstate Insurance Company.

**OPINION**

Lawrence and Janet Grimes, the named insureds under an Allstate Deluxe Homeowner's Insurance Policy, appeal the award of summary judgment in favor of Allstate.

This action arises out of a shooting at the home of Lawrence and Janet Grimes. Wesley Grimes, their adult son who lived with his parents, invited his former girlfriend, Melissa Yarbrough, to his parents' home so the two could talk about their relationship. Following a conversation in the driveway of the Grimes' residence, Wesley Grimes shot and seriously injured Ms. Yarbrough. She survived the shooting and filed the underlying tort action against Wesley Grimes and his parents alleging *inter alia* that Lawrence and Janet Grimes failed to render aid to her after the shooting.[1] Lawrence and Janet Grimes notified Allstate of the suit and requested that it provide a defense and coverage pursuant to the Allstate Deluxe Homeowner's Insurance Policy. Allstate denied coverage and filed this declaratory judgment action seeking a ruling that the Grimes had no coverage and that Allstate had no duty to defend an action brought by Ms. Yarbrough because she was seeking damages resulting from the intentional and criminal acts of an insured, their son Wesley.

Allstate moved for and was awarded summary judgment. In granting summary judgment, the trial court held that the policy excluded coverage for intentional and criminal acts by an insured and that Allstate had no duty to defend Lawrence and Janet Grimes in reference to the civil action brought by Melissa Yarbrough for injuries suffered as a result of being shot by Wesley Grimes.

The issue is whether there is coverage and thus a duty to defend Lawrence and Janet Grimes with regard to the allegations in Ms. Yarbrough's complaint that they failed to render aid to her after she was shot by their son Wesley.

An appellate court's review of a motion for summary judgment is governed by well settled standards. *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). Summary judgment is appropriate where the moving party establishes "that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law." Tenn. R. Civ. P. 56.04; *see also Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). In reviewing a motion for summary judgment, this court must examine the evidence and all reasonable inferences in the light most favorable to the non-moving party and must discard all countervailing evidence. *Mooney v. Sneed*, 30 S.W.3d 304, 305-06 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 210-211 (Tenn. 1993). Moreover, this court's review of the trial court's summary judgment ruling is *de novo* with no presumption of correctness. *McNabb v. Highways, Inc.*, 98 S.W.3d 649, 652 (Tenn. 2003).

---

[1]An additional claim was made against Lawrence and Janet Grimes. Ms. Yarbrough also alleged that the parents were negligent in that they were aware of the volatile relationship between their son and her, they knew their son had violent propensities, and they knew he kept a firearm in their home. This issue was resolved in the trial court and is not before this court.

The following policy provisions are pertinent to this appeal:

**Definitions Used In This Policy**

1. "**You**" or "**your**" - means the person named on the Policy Declarations as the insured and that person's resident spouse.
2. "**Allstate**," "**we**," "**us**," or "**our**" - means the company named on the Policy Declarations.
3. "**Insured person(s)**" - means **you** and, if a resident of **your** household:
      a) Any relative; and
      b) any dependent in **your** care.

\* \* \* \*

**Insuring Agreement**

\* \* \* \*

The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

\* \* \* \*

**Losses We Do Not Cover Under Coverage X:**

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**.

The Grimes contend that Ms. Yarbrough's complaint alleges a cause of action against them for negligent acts and omissions separate and independent of those of their son Wesley. Some of Ms. Yarbrough's injuries are alleged to be the result of Lawrence and Janet Grimes' failure to render aid to Ms. Yarbrough after the shooting. Paragraph 23 of the Complaint states:

Further, the Plaintiff alleges that the Defendant's parent's, Lawrence and Janet Grimes, were negligent in that they heard the Plaintiff's sister's cries for help, and witnessed the Plaintiff laying injured in their own driveway, but rendered no

assistance to the Plaintiff even though the Plaintiff was invited to their residence by the Defendant.[2]

The Grimes further contend that the alleged act of failing to render aid is *arguendo* an intervening and superseding event and if Ms. Yarbrough can establish that she sustained injuries as a proximate result of the alleged failure to render aid then such damages are not the result of the intentional and criminal act of Wesley (or the Grimes) and thus are not excluded.

Allstate argues that this court has interpreted an identical joint obligations clause to exclude coverage. *Allstate v. Jordan*, 16 S.W.3d 777 (Tenn. Ct. App. 1999). In *Jordan*, the homeowners' son shot the victim who came to the home to deliver a pizza. As in this case, the homeowner's son lived in the home. The homeowners were alleged to be negligent in the supervision of their son. As is the case here, Allstate provided homeowner's coverage to the homeowners. Allstate denied coverage insisting that the homeowners' liability was based on the son's intentional and criminal act and, therefore, there was no coverage due to the application of the "joint obligations clause."

As Allstate suggests, the relevant policy provisions are identical to those in *Jordan* and the facts are similar. In *Jordan*, the homeowners' son was accused of burglarizing a home from which guns were stolen. The homeowners were informed that their son was suspected of burglarizing the home. The weapon used to shoot the pizza delivery employee in *Jordan* was stolen in the earlier burglary. The parents of the shooting victim sued the homeowners and their son. The complaint alleged *inter alia* that the homeowners negligently supervised their son and negligently allowed their son to have a weapon in their home. This court held that Allstate was not obligated to provide coverage or a defense for the homeowners stating:

> The policy language in the instant case specifically excluded coverage for intentional criminal acts of any insured person. Not only is this language quite explicit, but also under the joint obligation clause it is clear that there can be no coverage for any insured when one of the insureds commits an intentional act for which coverage is sought. This clause provides that the acts of an insured person are binding on any other insured person. We find no ambiguity in the language of the policy that would lead an insured to believe that the insurance company would provide coverage for any insured resulting from the intentional acts of any other insured. Sean Jordan's intentional act in shooting Troy James Lavin is binding upon the other insureds under the policy, Ross and Susan Jordan.

*Id*. at 782 -783.

While the policy provisions are identical, there is one significant difference between these two cases. Lawrence and Janet Grimes are alleged to have failed to render aid after the shooting,

---

[2]Ms. Yarbrough's sister accompanied her to the Grimes residence and was present when the shooting occurred. Wesley Grimes is identified as the "Defendant" in the Complaint.

after the intentional and criminal act by their son Wesley. The claim asserted against the parents in *Jordan* pertained to their alleged failure to supervise their son prior to the shooting. There was no allegation of a subsequent and separate negligent act or omission against the parents in *Jordan*.[3]

The question then is whether the alleged act of failing to render aid after the shooting is or is not a separate negligent act for which Ms. Yarbrough may be awarded damages, assuming she can prove that she suffered injuries from the alleged acts or omissions of the Grimes.

Allstate argues that since Wesley Grimes' intentional and criminal act of shooting Ms. Yarbrough is excluded, then any subsequent acts or omissions are also excluded even if the subsequent act or omission is attributed to insured persons other than the insured who acted intentionally or criminally. In essence, Allstate is asserting that the intentional and criminal act of Wesley Grimes constitutes a line of demarcation after which any and all subsequent acts and omissions are also excluded. We find this argument to be without merit because the policy exclusion does not automatically exclude coverage for other insured persons who are alleged to have subsequently and separately acted in a negligent manner or to have negligently failed to act. Our finding is based on *Allstate v. Watts*, 811 S.W.2d 883 (Tenn. 1991), and *Planet Rock, Inc. v. Regis Insurance Company*, 6 S.W.3d 484 (Tenn. Ct. App. 1999). *See also Almany v. Nationwide Insurance Company*, 1987 WL 4745 (Tenn. Ct. App. 1987).

The insured in *Allstate v. Watts*, Mr. Crafton, was helping Mr. Cole replace the brake shoes on Cole's truck. The two were working on the truck in Crafton's garage when a third gentleman, Mr. Watts, dropped in for a visit. Cole and Crafton told Watts that they were having difficulty removing "frozen" lug nuts on the truck. Watts offered to help remove the lug nuts and chose to use a torch to "cut" the lug bolts. Before using the torch, Watts asked Crafton if any flammable materials were located in the garage. Crafton replied that there were none. As Watts was cutting the lug bolts on the truck, sparks ignited a pan containing a flammable liquid under the truck. In an attempt to carry the ignited pan outside, Crafton dropped and then kicked the pan causing the ignited liquid to splash upon and burn Watts.

Watts sued Crafton alleging that Crafton was negligent for failing to correctly advise him of the presence of the flammable liquid and that Crafton was also negligent in picking up, dropping and then kicking the pan and its flaming contents onto Watts. Crafton asked his insurer, Allstate, to defend the claim. Allstate denied coverage and filed a declaratory judgment action arguing that Watts' injuries arose out of the maintenance of a vehicle and were thus excluded under the policy. The policy provided: "We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy . . . loading or unloading of any motorized land vehicle or trailer." *Watts*, 811 S.W.2d at 884-885. Crafton argued that two separate and independent events were responsible for the injury: one, the use of the torch to perform maintenance on the vehicle – which is excluded; and two, the negligent act of failing to warn in conjunction with the mishandling

_____

[3]A similar allegation was initially alleged against Lawrence and Janet Grimes but that claim was resolved in the trial court and is not at issue before this court.

of the ignited pan – which is not excluded. *Watts*, 811 S.W.2d at 885-886. Allstate argued that the acts of maintenance of the truck, specifically cutting the bolts – an excluded risk – set in motion the chain of events that caused Watts' injuries. *Watts*, 811 S.W.2d at 885. Allstate argued that the phrase "arising out of" encompassed *any* casual relationship such that even a seemingly unrelated cause of injury could exclude coverage so long as it originated with maintenance of the truck. *Watts*, 811 S.W.2d at 885. This is also known as the "but-for" theory.

Whether Allstate was obligated to provide coverage hinged upon two opposing theories: the "concurrent cause doctrine" on which Crafton relied, and the "chain of events doctrine" on which Allstate relied. *Watts*, 811 S.W.2d at 885-886. Our Supreme Court rejected the "chain of events doctrine" adopting instead the "concurrent cause doctrine," stating:

> It is true that "arising out of" is an extremely broad phrase, so broad, in fact, that it is difficult to conceive of a rule that draws a justifiable line between coverage and no coverage at any reasonable point. Adopting Allstate's interpretation of "arising out of" to include any causal relationship would exclude coverage if, for example, Watts had gone into Crafton's home to retrieve a tool to aid in removing the lug nuts, and fell down a flight of stairs. Arguably, at least, maintaining the vehicle would have set in motion the chain of events that produced the eventual result. That is, but-for the difficulty encountered in maintaining the brakes on the truck, Watts would not have been inside of the home when he fell in order to obtain the tool. The problem with this approach is that cause and effect extend to near infinity. It is for this reason that we reject the "chain of events" theory of application which appears to hinge on a "but-for" theory of causation utilized by the Court of Appeals and urged by Allstate.

*Watts*, 811 S.W.2d at 887.

The Supreme Court agreed with Allstate that using the torch to repair the truck and ultimately causing the fire constituted maintenance and was excluded for it held that "using the torch in the manner described here would constitute an excluded risk under the policy if standing alone." *Watts*, 811 S.W.2d at 888. However, the Court also found that other causes of the injury existed which were not excluded from coverage:

> This does not mean, however, that we can simply ignore the presence of other causal factors involved – the placement of the flammable substance, Crafton's purported failure to warn of the substance upon specific inquiry, and the negligence in dropping and kicking the burning liquid – all of which are insured risks that the insuror was willing to accept a premium for and are the acts that comprise the basis of the lawsuit brought by Watts against the insured as evidenced by the allegations in the complaint itself. It appears that the complaint is not predicated upon a cause of action or risk which would be excluded by the policy, but rather negligence. *See Engeldinger v. State Auto. & Cas. Underwriters*, 236 N.W.2d 596, 600-01 (Minn.1975). Further, simply because there might arguably be a mere connection between using the torch

and the ultimate harm, does not justify a finding of no coverage when other causal factors played a substantial role in producing the loss complained of by Watts. *Travelers*, 491 S.W.2d at 367.

*Watts*, 811 S.W.2d at 888.

This court's opinion in *Planet Rock, Inc. v. Regis Insurance Company*, 6 S.W.3d 484 (Tenn. Ct. App. 1999) provides further guidance concerning the chain of events defense as it pertains to an assault and battery exclusion. In *Planet Rock*, a nightclub patron was seriously injured in a fight with two other patrons. The fight occurred outside the club, in a nearby parking lot. The victim, who was knocked unconscious in the fight, was brought back into the club by employees of the club. He was placed on a couch in one of the offices where he subsequently died. The parents of the victim brought an action against Planet Rock alleging *inter alia* that its employees were negligent in the subsequent care, or lack of care, provided their son after the assault. The pertinent allegations in the complaint stated that after employees of Planet Rock brought the victim back inside Planet Rock following the assault, they failed to call for medical assistance,[4] that the victim died "without the benefit of medical assistance," and that upon being informed of the seriousness of the injuries, agents, servants or employees of Planet Rock "undertook the medical care of the injured Craig Williams . . . in a grossly negligent manner, failing or refusing to make available professional medical assistance which was available, thereby denying the deceased proper medical care ultimately leading to and proximately causing his death." *Planet Rock,* 6 S.W.3d at 486. Planet Rock notified its liability carrier, Regis Insurance Company, of the suit whereupon Regis denied coverage on the basis of an assault and battery exclusion in the policy. Regis's defense was premised on a combination of the assault and battery exclusionary clause with the chain of events defense. This court characterized Regis' defense as follows, "*no matter what else happened*, if there is an assault and battery that starts the chain of events, the bodily injury arises out of the assault and battery and therefore there is no coverage." *Planet Rock,* 6 S.W.3d at 491. (emphasis added).

The Regis policy provided coverage for bodily injury liability. In pertinent part the policy stated that Regis will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury to which this insurance applies, and Regis "shall have the . . . duty to defend any suit against the insured seeking damages on account of such bodily injury . . . , even if any of the allegations of the suit are groundless, false or fraudulent. . . . " *Planet Rock,* at 488. The policy defined bodily injury to include "Incidental Medical Malpractice Injury" which was defined as "injury arising out of the rendering of or failure to render, . . . the following services . . . medical, surgical, . . . or treatment. . . ."

The exclusion for "assault and battery" stated:

Actions and proceedings to recover damages for bodily injuries or property damage arising from the following are excluded from coverage and [Regis] is under no duty

---

[4]An employee of Planet Rock called for assistance but then canceled the request for police assistance.

to defend or to indemnify an insured in any action or proceeding alleging such damages:

      1. Assault and Battery or any act or omission in connection with the prevention or suppression of such acts;

      2. Harmful or offensive contact between two or among two or more persons;

      * * *

This exclusion applies regardless of the degree of culpability or intent and without regard to:

      A. Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

      B. The alleged failure of the insured or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person whether or not an officer, employee, agent or servant of the insured;

      C. The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any such conduct.

*Planet Rock,* 6 S.W.3d at 488-489.

Applying the court's reasoning in *Watts*, this court rejected the "no matter what else happens" defense in favor of the "concurrent cause doctrine." *Planet Rock,* 6 S.W.3d at 491-493, citing *Watts*, 811 S.W.2d at 887-888. Specifically, this court held that Regis provided coverage for and owed a duty to defend Planet Rock against the claims of negligence in rendering aid and/or failing to render aid to the victim following the assault. *Planet Rock* at 489.

Allstate's argument to this court – for extension of the exclusion via the joint obligations clause – is very similar to the chain of events theory it argued in *Watts*, which argument our Supreme Court rejected. *Watts,* 811 S.W.2d at 887 (cause and effect, under Allstate's theory, could "extend to near infinity.") From our review of *Watts* and *Planet Rock*, we find no justification to extend the joint obligations clause to subsequent, separate and independent acts of negligence of other insureds.

The allegations in paragraph 23 of the Complaint allege independent acts of negligence against Lawrence and Janet Grimes, which allegedly occurred subsequent to the shooting and which may give rise to injuries in addition to those Ms. Yarbrough sustained from the intentional acts of Wesley Grimes. The allegations in paragraph 23 of the Complaint are not predicated upon a cause of action or risk that is excluded under the policy, but rather upon the alleged subsequent and independent acts of negligence by Lawrence and Janet Grimes. Therefore, the alleged subsequent and independent acts of negligence and additional injuries, if any, suffered by Ms. Yarbrough attributable to the failure of Lawrence and Janet Grimes to render aid are not excluded. To the

contrary, the policy affords Lawrence and Janet Grimes coverage for such alleged acts and injuries. Thus, Allstate has a duty to defend Lawrence and Janet Grimes.

Costs of appeal are assessed against Allstate Insurance Company.

_____
FRANK G. CLEMENT, JR., JUDGE