**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0170n.06

**No. 12-5638**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Feb 13, 2013**

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| CHEYENNE COUNTRY; KENNETH R. ROBERTS; | ) | DISTRICT OF TENNESSEE |
| DONALD SAMPLES; ROBERT DAVIS; JAMES | ) | |
| MCCLAIN; BENJAMIN L. MOUNT; TIFFANY | ) | |
| SMITH, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

BEFORE:  MARTIN and ROGERS, Circuit Judges, and TARNOW, District Judge.[*]

ROGERS, Circuit Judge.  This is a dispute over liability insurance coverage.  The insured is a bar in Memphis—Cheyenne Country—its owners, and its employees.  They have been sued by Tiffany Smith on behalf of the surviving son of Howard Virginia, who died after a confrontation with bar security.  Smith's complaint alleges that Cheyenne Country security attacked Virginia, used a stun gun on him, restrained him with zip-ties, and failed to monitor him as he died in their custody.  Cheyenne Country's insurer, Atlantic Casualty, sued both parties in the underlying suit and obtained a judgment declaring Atlantic not responsible for defending or indemnifying Cheyenne Country.  In

---

[*]The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

its order, the district court relied on provisions in the insurance policy that exclude from coverage injuries arising out of assault and battery and injuries arising out of a combination of an assault and battery-related cause and any other cause. Cheyenne Country appeals, arguing: (1) that the incident did not constitute battery, (2) that the concurrent cause doctrine requires Atlantic to defend the suit because at least one claim in the underlying complaint would not be excluded, and (3) that Atlantic should not be permitted to create an exception to an exclusion on one page and take it away on another.

The claims in Smith's complaint fall squarely under the policy's exclusions. Although Tennessee has adopted the concurrent cause doctrine, requiring an insurer to defend its insured if any alleged cause of injury is not excluded, the parties have contracted around that doctrine. Moreover, the insurance contract does not violate public policy. None of the insured's arguments on appeal warrants reversal.

Tiffany Smith sued Cheyenne Country, its owners, and its security personnel on behalf of the minor surviving son of Howard Virginia. The complaint alleged the following facts:

On January 17, 2010, Virginia was asked to leave Cheyenne Country and did so willingly. He and his friends returned to the bar to ask for a refund, at which time "an altercation ensued" between Virginia and Cheyenne Country security. Compl. ¶15. "As Mr. Virginia struggled with Cheyenne Country security, these [d]efendants physically struck Mr. Virginia and electrically shocked him with a stun gun or similar dangerous instrumentality." *Id.* at ¶16 The electric stun gun was allegedly applied to Virginia's head. *Id.* at ¶27. After Cheyenne Country security subdued

Virginia, they left him lying on the pavement face-down, bleeding from a head wound, with his hands bound behind his back with zip-ties. *Id.* at ¶19. When police arrived, they found Virginia dead. *Id.* at ¶22.

The complaint brought three counts and a "fifth cause of action." The first count accused Cheyenne Country's employees and owners of negligence. It accused Cheyenne Country's staff of failing to use proper care and caution "in utilizing dangerous instrumentalities to gain submission and control over another individual." *Id.* at ¶31. It also accused Cheyenne Country's staff of failing to take care of and monitor Virginia while he was in their custody, failing to assess and treat Virginia's medical condition, failing to monitor whether Virginia was breathing, and failing to request timely medical aid. *Id.*. The second count accused Cheyenne Country of failing to exercise due care and caution, failing to train its employees with respect to handling persons like Virginia, failing to train its employees with respect to the handling of dangerous instrumentalities, failing to act reasonably in hiring, training, and retaining its staff, and failing to promulgate and enforce rules and regulations that would keep employees and customers safe. *Id.* at ¶35. The third count sought to hold Cheyenne Country vicariously liable for the negligence of its employees. *Id.* at ¶38. The "fifth cause of action" provides no new allegations but declares again that Cheyenne Country failed "in the above mentioned duties and was therefore negligent," and that "Cheyenne Country's negligence was the direct and proximate cause of Decedent's injuries including but not limited to his subsequent death." *Id* at ¶¶ 40–41.

Cheyenne Country's insurer, Atlantic Casualty Insurance Company, filed suit against all parties involved in the underlying tort suit seeking a declaratory judgment holding it not responsible for the defense of Cheyenne Country or for any liability related to the incident.[1] Atlantic cited certain broad exclusions in the policy. The key exclusion was for assault and/or battery:

> 1. This insurance does not apply to and we have no duty to defend any claims or "suits" for "bodily injury", "property damage" or "personal and advertising injury" arising in whole or in part out of:
>
> a) the actual or threatened assault and/or battery whether caused by or at the instigation or direction of any insured, his employees, patrons or any other person;
> . . .
> c) the negligent.
>    (i) employment;
>    (ii) investigation;
>    (iii) supervision;
>    (iv) training;
>    (v) retention;
>    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) or (b) above.
> d) any actual or alleged injury arises out of any combination of an assault and/or battery-related cause and a non-assault or battery-related cause;
> e) any actual or alleged injury arises out of a chain of events which includes assault and/or battery, regardless of whether the assault and/or battery is the initial precipitating event or a substantial cause of injury;
> f) any actual or alleged injury arises out of assault and/or battery as a concurrent cause of injury, regardless of whether the assault and/or battery is the proximate cause of injury.
> . . . .

---

[1] From here on, this opinion will refer to all of the defendants, including the bar, its owners, its security personnel, and Tiffany Smith collectively as "Cheyenne Country."

> 3. For the purposes of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to, injury of any kind resulting from the use, or threatened use, of a gun, firearm, knife or weapon of any kind.

R. 1-10, PageID #87. The policy also includes an exclusion covering expected or intended injuries.

The exclusion first appears on the sixteenth page of the policy:

> This insurance does not apply to:

> a. Expected Or Intended Injury
>    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*Id.* at PageID #60–61. However, the exclusion is modified on the thirty-seventh page of the policy:

> Exclusion 2.a. of the Commercial General Liability Coverage Form is deleted in its entirety and replaced by the following:
>    a) "Bodily injury" or "property damage" expected or intended from the standpoint of any insured.

*Id.* at PageID #81. Atlantic argued that these exclusions encompassed every claim in the complaint, thus absolving it of any duty to defend or indemnify Cheyenne Country.

Atlantic moved for summary judgment, relying on the assault and/or battery exclusion. Cheyenne Country denied that the incident fell under the exclusion, arguing that the complaint did not contain any allegations that Cheyenne Country's employees did not have a legal right to confront Virginia or that they used unlawful or excessive force. Cheyenne Country also relied on the reasonable force exception to the expected or intended injury exclusion, either missing or ignoring that it was "deleted" later in the document. In the alternative, Cheyenne Country brought up the concurrent cause doctrine, arguing that Tennessee courts require insurance companies to defend their

insured so long as a nonexcluded cause is a substantial factor in producing the injury, even if an excluded cause also contributed to the injury.

In its facts section, Cheyenne Country's response told a vastly different story from the underlying complaint. According to the response and its attached affidavits and depositions, Virginia attacked Cheyenne Country security in the parking lot and remained the aggressor through the struggle. Cheyenne Country stated that at least one of its employees checked on Virginia to make sure he was breathing. Furthermore, Cheyenne Country's version of the story does not include a stun gun. Atlantic objected to the use of these affidavits, relying on *St. Paul Fire and Marine Insurance Co v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994), to argue that the obligation of an insurance company to defend its insured is to be determined solely by the allegations contained in the underlying complaint. Atlantic asked the district court to ignore Cheyenne Country's affidavits and depositions when ruling on the summary judgment motion.

The district court agreed with Atlantic and granted summary judgment. The district court noted that the meaning of battery under the policy, without further definition, is ambiguous. However, the court found the portion of the exclusion that specifically referred to "injury of any kind resulting from the use, or threatened use, of a gun, firearm, knife or weapon of any kind" in the definition of battery to be controlling. Applying this exclusion to the allegations of the complaint, the district court reasoned that a stun gun was a "weapon of any kind," and therefore its alleged use constituted battery under the policy.

The district court ruled that the concurrent cause doctrine does not assist Cheyenne Country. While the district court noted that there were negligence claims that did not involve the use of the stun gun, the court reasoned that those claims fell under the broad exclusion of "any actual or alleged injuries arising out of any combination of an assault and/or battery-related cause and a non-assault or battery-related cause." Alternatively, the district court reasoned that the policy's exclusion of "any actual or alleged injury arising out of assault and/or battery as a concurrent cause of injury, regardless of whether the assault and/or battery is the proximate cause of injury," would encompass all the claims in the complaint. The district court determined that all the claims against the bar were excluded by the same assault/battery exclusions or by the exclusion covering negligent employment, investigation, supervision, training, and retention of employees who have committed battery. Finally, the court did not accept Cheyenne Country's argument based on an asserted reasonable force exception to the expected or intended injury exclusion because the exception language is deleted later in the policy.

The district court concluded that because there was no coverage, there was no duty to defend. The court relieved Atlantic of all duties and liabilities to Cheyenne Country and prohibited any of the parties in the underlying suit from prosecuting any actions seeking insurance coverage for the underlying claims. Cheyenne Country now appeals, repeating its arguments that the complaint does not allege a battery, that the concurrent cause doctrine saves the nonbattery claims, and that the reasonable force exception to the intended injury exclusion applies.

The strongest of Cheyenne Country's arguments is that the concurrent cause doctrine, which Tennessee has adopted, applies here. That doctrine requires insurers to defend their insured if any alleged cause of injury would be covered by the insurance policy, regardless of how many excluded causes are also in the complaint. *See Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 887 (Tenn. 1991). In the underlying complaint, Smith alleges that Virginia's death was due to an excluded cause—battery—and several covered causes, including negligent failure to monitor a restrained person. *See* Compl. ¶31. However, the parties have explicitly contracted around the concurrent cause doctrine. The policy excludes "any actual or alleged injury [that] arises out of assault and/or battery as a concurrent cause of injury, regardless of whether the assault and/or battery is the proximate cause of injury." R 1-10, PageID #87. This language could not be clearer. Tennessee cases that have applied the concurrent cause doctrine to find coverage are therefore inapposite. The insurance contracts at issue in those cases did not have similar language. *See Watts*, 811 S.W.2d at 884; *Planet Rock, Inc. v. Regis Ins. Co.*, 6 S.W.3d 484, 488 (Tenn. Ct. App. 1999). The policy explicitly excludes any injury that arises from battery, regardless of the existence of concurrent causes. The underlying allegations include a battery. Therefore, Atlantic does not have to defend Cheyenne Country.

Cheyenne Country argues that such exclusions are "extremely broad, ambiguous, and are against public policy." Cheyenne Br. at 18. However, Cheyenne Country fails to cite any authority barring insurance companies from contracting around the concurrent cause doctrine. Many insurance companies have adopted similar language in their policies in response to courts' adoption of the

concurrent cause doctrine. *See Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 433 n.7 (5th Cir.

2007). This court has given effect to such language in the past. *See Front Row Theatre, Inc. v. Am.

Mfr's Mut. Ins. Cos.*, 18 F.3d 1343, 1347 (6th Cir. 1994). A majority of state courts to have

considered the matter have likewise permitted insurance companies to contract around the doctrine.

*Leonard*, 499 F.3d at 434. It appears that only two states' courts have forbidden it. *See Murray v.

State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 12 (W.Va. 1998); *Safeco Ins. Co. of Am. v. Hirschmann*,

773 P.2d 413, 416–17 (Wash. 1989). While the Tennessee Supreme Court has yet to address the

question, at least two federal district court judges in Tennessee have held that insurance companies

are free to use such language to contract around *Watts* and its progeny. *See Hardy & Kelly LLC v.

QBE Ins. Corp.*, No. 3-11-0155, 2012 WL 1744670, at *3 (M.D. Tenn. May 16, 2012); *State Auto.

Mut. Ins. Co. v. R.H.L., Inc.*, No. 07-1197, 2010 WL 909073, at *11 (W.D. Tenn. Mar. 12, 2010);

*see also Davidson Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 136 F. Supp. 2d 901, 909 (W.D.

Tenn. 2001) (dictum). Such language has almost nationwide support and we have no reason to

conclude that the Tennessee Supreme Court would find that it violates public policy.

Cheyenne Country's remaining arguments lack merit. Cheyenne Country argues that no

battery took place and, therefore, none of the claims are excluded from coverage. However, the

underlying complaint alleges actions that fall under the policy's expansive definition of battery. The

complaint alleges that Cheyenne Country's security "physically struck Mr. Virginia and electrically

shocked him with a stun gun or similar dangerous instrumentality." Compl. ¶16. It also alleges that

the Cheyenne Country defendants "acted in concert to apply deadly force upon the person of Howard

Virginia while utilizing an inherently dangerous instrumentality," and that "security used an electric stun gun and applied it to the head of Howard Virginia, constituting a substantial risk of death or serious bodily injury." Id. at ¶¶ 26–27. The definition of battery in the policy includes "injury of any kind resulting from the use, or threatened use, of a gun, firearm, knife or weapon of any kind." R. 1-10, PageID #87. The complaint alleges an injury resulting from the use of a weapon, namely a stun gun. Therefore, the complaint's allegations constitute a battery under the policy.

At oral argument, Cheyenne Country raised a new argument. Noting that no evidence of a stun gun has been produced thus far in the underlying trial, Cheyenne Country argued that even if the allegations in the underlying complaint preclude a duty to defend, there may be a duty to indemnify after the trial concludes. However, Cheyenne Country waived this argument by not including it in its brief to this court. *See United States v. Montague*, 438 F. App'x 478, 483 (6th Cir. 2011); *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005).

Finally, Cheyenne Country's argument that this court should apply the reasonable force exception to the policy's expected or intended injury exclusion also lacks merit. The policy provides a reasonable force exception to the exclusion on page sixteen, then takes it away on page thirty-seven. *See* R 1-10, PageID #60–61, 81. However, the policy is very clear that it is taking away the exception. It states: "Exclusion 2.a. of the Commercial General Liability Coverage Form is deleted in its entirety and replaced by the following: . . . ." Id. at PageID #81. The deleting language also includes the same heading as the original exclusion and the same language, leaving out the reasonable force exception. The words "deleted in its entirety and replaced" do not require a law

degree to understand. Contrary to Cheyenne Country's assertions, the average insured does not have to anticipate or expect that the provision will be replaced later on — he or she needs merely to read on. If the insured is unclear which exclusion "2.a." is, he or she can match up the title or the language or ask a lawyer. This is a common way of modifying an insurance contract without needing to redo the entire contract for each insured. If we were to find that this violates public policy, a large number of insurance contracts that were negotiated by sophisticated business people would be invalid. There is no basis for such a radical step.

Because each of Cheyenne Country's arguments lacks merit, the district court's judgment is **AFFIRMED**.